## THERIOT v. TASSIN et al.
### No. 1117.

Court of Appeal of Louisiana. First Circuit.
March 7, 1933.

McCoy, Moss & King and C. S. Girod, all of Lake Charles, for appellants.

Hawkins & Pickrel, of Lake Charles, for appellee.

ELLIOTT, Judge.

An automobile in which was riding Miss Priscilla Theriot as the guest of George Tassin, while being driven by said Tassin on the highway called the Old Spanish Trail, near Beaumont in the state of Texas, was overturned, and Miss Theriot, as the result of the accident, sustained very serious and painful bodily injuries, and was put to very important expense and suffered serious financial losses.

She claims of the said Tassin and American Surety Company of New York in solido $25,000 in damages on said account.

She alleges that the automobile was overturned as a result of the negligence, inattention, excessive speed, and want of care for her safety on the part of said Tassin in driving said automobile, with the permission of R. D. Coleman, its owner; that said Tassin had borrowed said automobile from R. D. Coleman for the purpose of taking her and some other friends riding; that said Coleman held at the time an insurance policy in the American Surety Company of New York, and that under the terms of the policy she has insurance protection against said Tassin and the said surety company on account of her injuries and losses sustained in the way stated.

George Tassin appeared, and for answer denies that plaintiff has any lawful claim on him. He denies the carelessness, inattention, and excessive speed while driving alleged against him. Alleges that the accident occurred at night; that he was unfamiliar with the road; that the road curved first to the left and then to the right; that he made the first curve, but failed to see the second one; that plaintiff was familiar therewith, and should have warned him of the danger, but did not do so; that she was therefore guilty of contributory negligence in the matter of the accident and had no right to recover of him on said account; that under the terms of the policy he is entitled to recover from the said surety company any sum which plaintiff may recover from him.

American Surety Company of New York, for answer to plaintiff's demand, denies liability. It also denies being liable to said Tassin as claimed by him. It alleges that said Tassin was not driving said automobile at the time of the accident with the permission of

Coleman; that said Tassin, although on the lookout ahead at the time of the accident, was unaware of the curves in the road; that he was under the impression that the road continued in a northerly direction after the first curve, and was not aware of the other one; that, upon discovering it, he immediately put on his brakes and did everything possible to prevent the accident, but the car overturned in spite of all he could do; that plaintiff was familiar with the road and knew that said Tassin was not; that she should have warned him of the danger due to said curves, but she negligently failed to do so; that she was therefore contributorily negligent, and had no right to recover.

There was judgment in favor of the plaintiff and against said Tassin and said surety company in solido for $3,970, with interest and cost and a further judgment in favor of said Tassin and against said surety company for the sum which he might be compelled under the judgment to pay to the plaintiff.

The defendants American Surety Company of New York and George Tassin have appealed.

The case is well stated in the opinion of the lower court. The defendant surety company in its answer denies that it is liable to the plaintiff under the terms of the policy; yet, if we read its brief properly, its main contention is, that it is not liable to her because Tassin was not in charge of and driving the automobile with the permission of Coleman at the time of the accident, and, if he was, then it is not liable because the accident was not due to Tassin's fault.

The evidence shows that George Tassin and R. D. Coleman were riding about Lake Charles in an automobile belonging to Coleman. Tassin suggested to Coleman that he lend the automobile to him, Coleman agreed and got out of the car, and delivered it to Tassin. Tassin borrowed the automobile for the purpose of taking a young lady friend for a ride. The only stipulation made in the contract of borrowing, according to Coleman, was that Tassin was to meet him with the car and let him have it back at approximately 11 o'clock p. m. of the night in question, which was November 6, 1931. Coleman admits that there was nothing said as to where the car was to be driven. He loaned and delivered the automobile to Tassin, evidently knowing that he (Tassin) contemplated taking some friends for a ride.

Tassin testifies that he borrowed the automobile from Coleman for the purpose stated; that there was no stipulation as to where it was to be driven, there was no discussion to that effect, and, as for the time when it was to be returned, he says: "Mr. Coleman was going to a dance and the intermission let out at 11:15. I told him I would meet him between eleven and midnight. * * * If I did not see him, for him to hang around the store and I would be there. * * *"

The evidence indicates that the parties did not understand that a strict enforcement of the time when the car was to be returned was in the mind of either party.

Tassin received the automobile at about 7:30 p. m., and immediately drove to the home of a young lady and invited her to go riding with him. It was of course dark at that time. She got into the car on his invitation, but suggested that they invite her friend Miss Theriot to ride with them. They accordingly proceeded to the store where Miss Theriot was employed, and she agreed to go. A young man, a friend of Miss Theriot, also accepted an invitation to be one of the party.

Tassin and his young lady friend sat on the front seat, and Miss Theriot and her friend occupied the back seat. They at first drove around Lake Charles, but along about 8:40 p. m. one of the parties, the evidence does not show which one, suggested that they drive to Beaumont, Tex., and see the fair. It is 60 miles from Lake Charles to Beaumont. The trip therefore required a drive of 120 miles. It was therefore practically impossible, when the parties started, to drive to Beaumont and get back by 11 o'clock, which was approximately the time Coleman states was his understanding that the car would be returned to him.

The defendant American Surety Company urges that Tassin was not driving the car pursuant to Coleman's permission, in going to Beaumont; that his permission expired at 11 o'clock, approximately stated, and he knew when he started that he could not go to Beaumont and get back to Lake Charles by 11 o'clock, or at approximately that time; that therefore Tassin, in driving to Beaumont, was driving without Coleman's permission, and at the time of the accident his driving was not covered by the policy; that plaintiff's injuries are therefore not protected by the policy provisions.

The evidence shows that the accidental overturning occurred at about 10:30 p. m. Therefore, according to Coleman, and also according to Tassin, the loan agreement was in force and effect at that time, and the fact that Tassin could not get the car back to Lake Charles by 11 o'clock p. m., approximately stated, did not avoid nor set aside the permission under which he had the right to the use of the car at the moment of the accident, nor avoid the legal consequences growing therefrom. We therefore hold that the surety company is bound by the permission which was in force and effect at the time of the accident, although it was impossible to get the car back to Lake Charles by 11 o'clock or approximately thereto.

[2-4] The next question is the alleged negligence of Tassin in driving the car. He was

driving at night on a road over which he had never before driven at night; he had been over it a time or two in the daytime, but he admits that he was not familiar with the road. He testifies that he was not aware of the curves, the second one commencing where the first one ended, and which fact brought about the accident. The first curve is to the left and the next is to the right, and it appears that at about the place where the second curve commences there is a road which leaves the highway and keeps straight ahead, while the highway curves to the right. Tassin says that he was deceived by the road ahead, and did not notice that the highway curved until it was too late to take the curve. But under the evidence these curves are not so abrupt as to be unsafe for a party driving with proper care. The highway was no doubt constructed under the supervision of highway engineers, and there is testimony that the curves can be safely negotiated in an automobile going 40 miles an hour; that it is done perhaps every hour of the day. Tassin testifies, with the support of the other gentleman riding in the car, that the brakes had been applied and the car practically stopped at the time it overturned, but the fact is established that after leaving the road it crossed a low ditch-like place on the side of the road and did not come to a standstill until the front end was about 12 feet distant from the road and pointing toward it, with the rear end pointing away from it, and the car had turned over completely, the bottom side up. In fact, remarks made by some of the parties seem to indicate that it may have turned over twice before it stopped rolling over, after it started down the grade upon which the road was constructed. This physical fact shows that the automobile was going at great speed and momentum at the time it left the first, and should have taken the second curve. It justifies the conclusion that it was being driven at the time at excessive speed. A speed at night is excessive when the car cannot be controlled in an ordinary curve, not dangerous under ordinary speed with the driver looking ahead and attentive to his duty as driver. A driver owes it as a matter of duty to his guest to drive with his car under control, and to keep, particularly at night, a proper lookout ahead so as to be able to follow the road. It is our conclusion that Tassin was not attentive to his duty as driver, and brought on the plaintiff the injuries and pain, suffering, and losses she has sustained as a result of the overturning of the car. He had no right to expose his guest to dangers and perils due solely to his inattention in driving and lack of proper and ordinary care for their safety while riding in his car.

We find under the evidence that Tassin was wholly at fault for the accident.

■ The contention of Tassin and American Surety Company that plaintiff was familiar with the road and was in duty bound to warn Tassin of the curves, etc., is not supported by any evidence. She was not consulted about the driving; she was sitting on the back seat in the dark with her friend; did not know the road as well as Tassin, and cannot be justly charged with any fault or negligence contributing to the accident.

■ There is something said in the brief of American Surety Company about the accident occurring in the state of Texas. We do not see that such fact has any bearing. The law of the state of Texas is not before us, so we assume that it is like our own, and decide the case as it should be according to the law of this state.

In the case of Jacobs v. Jacobs, 141 La. 273, 74 So. 992, L. R. A. 1917F, 253, a guest claimed damage of a party with whom he was riding. The only part of the opinion which appears applicable to the present situation is that which reads as follows: "Although an invited guest of the driver of an automobile, being a mere licensee, is not entitled to the consideration due by a carrier to a passenger for hire, he is nevertheless entitled to the benefit of the provision of the Civil Code that any act of negligence or imprudence that causes injury to another obliges him who was at fault to pay for the injury." 141 La. 273, 74 So. 992, L. R. A. 1917F, 253.

See, also, Brock v. Friend, 4 La. App. 720.

The only remaining question about which there seems to be dispute according to the briefs of the parties is that of amount.

The plaintiff received painful and serious injuries; but at the time of the trial all her injuries had been overcome except one to her back. She was confined to her bed on that account for several months, and had not recovered at the time of the trial. One of the physicians who testified in the case gave it as his opinion that she might have a permanent injury on this account, but the preponderance of the opinion on the subject is that in the course of a few months she will be entirely well from this injury, and, as we understand it, be as well as ever.

■ The lower court allowed her $2,500 as damages on account of her pain, suffering, and personal injuries. After considering the evidence on the subject, we have concluded that the amount should be reduced to $2,000. She lost an important amount in wages, and had not been able to return to work at the time of the trial. She was allowed $720 on that account in the lower court. After considering the evidence concerning her loss on this account, we fix on $540 as the proper amount for her to recover. The clothing she wore at the time of the accident was ruined. The lower court allowed her $150 on that account. We think under the evidence it should have been $86.50.

The lower court allowed her $600 on account of hospital bills, fees, and physicians and trained nurses, medicines, etc. This amount has received our consideration. The plaintiff is not entitled to recover for a brace which cost $50, as it is not claimed in the petition, and the price of an electric pad bought is not stated. We think $385 the amount she should recover under this heading.

The amount due the plaintiff will therefore be reduced from $3,970 to $3,011.50, and, as thus reduced, the judgment appealed from is affirmed.

American Surety Company of New York to pay the cost in the lower court; the plaintiff the cost of appeal.