YARRUT, Judge.
Plaintiffs-appellants are the respective fathers appearing on behalf of themselves and their respective children, of tender age, who were injured in a highway collision between an automobile driven by Plaintiff Beatty, and a motor dump-truck driven by one Daigle. The children were guests in Beatty’s automobile at the time of the accident.
Defendant is the liability insurer of Plaintiff Beatty who, jointly with Jordan, brought this direct action against Beatty’s insurer only (not against Daigle or the *113 owner of the dump-truck) under LSA-R.S. 22:655.
Beatty in his joint petition with Jordan alleged his negligence, in causing the collision, as follows:
(a) He failed to keep a proper lookout.
(b) He failed to keep his vehicle under proper control. .
(c) He failed to maneuver his vehicle properly under the circumstances.
(d) He was driving at an excessive speed under the circumstances.
(e) He failed to keep a proper distance behind the vehicle in front of him.
(f) He failed to apply his brakes timely.
Defendant insurer, first admitting it was Beatty’s insurer, generally denied all allegations of the joint petition; and specially denied that Beatty was guilty of any negligence that caused the accident; and charged the accident was due solely to Daigle’s negligence in driving his truck across the highway, without warning, into the path of Beatty’s automobile, putting Beatty in a position of peril, from which he could not extricate himself to avoid the collision.
The accident occurred in July, 1961, about 9:30 p. m. on Airline Highway, near Moisant Airport.
In support of his self-incriminating allegations, Beatty testified that he was traveling the Airline Highway in the direction of Baton Rouge at an excessive rate of speed, and that he didn’t see the dump-truck until he was 30 to 40 feet behind it; that, because of his high acceleration, he was unable to avoid the accident and ran into the rear of the dump-truck; as a result of which his car was totally demolished, and the dump-truck was pushed off the shoulder of the road down the embankment.
On cross-examination Beatty testified:
“Q. Didn’t you tell me that you were clear, the road was clear ahead of you and all of a sudden this truck pulled in from the left side?
“A. All of a sudden I said I seen this truck in front of my lane of traffic, if I remember correctly, he was in my lane and I was traveling in, or on the line of the other lane.
“Q. Are you suggesting now that you were driving your automobile without looking ahead?
“A. I’m driving and looking ahead.
“Q. And didn’t you tell me that all of a sudden this car appeared from your left?
“A. All of sudden it appeared in front of me. Here is this dump truck (indicating), and I didn’t notice no lights on the dump truck, you understand, and so all of a sudden here is this dump truck in front of me and that’s what I told you.
“Q. And in that emergency all you could do was slap on your brakes, isn’t that right, or could you do anything else but apply your brakes, Mr. Beatty?
“A. I applied my brakes.
“Q. Was there anything else that you could do?
“A. No, I don’t see what else I could do.
“Q. I’m asking you, I mean, you did all you could do, is that right?
“A. You mean to prevent the accident?
“Q. I asked you if there was anything else you could do when you •saw this truck ahead of you except apply your brakes as hard as you could?
“A. I applied them all I could.”
*114 Daigle, driver of the dump-truck, testified he stopped at the intersection of a gravel road and the Airline Highway in obedience to a “Stop” sign; looked in both directions, saw no traffic coming, so entered the highway and was almost immediately struck by Beatty’s car. His view of the highway was clear and unobstructed. Significant is the distance Daigle testified he traveled on the highway prior to the collision. He testified he had traveled about one-half block and then estimated the distance as the length of the courtroom in which he was sitting as “a block or a little bit more.” The length of the courtroom was only 35 feet. It is apparent from Daigle’s testimony that he had traveled on the highway only a short distance, say ten or fifteen feet prior to the collision, per this cross-examination:
“Q. Did you come to a full and complete stop at the Airline Highway?
“A. Yes, sir.
* * * * * *
“Q. And from that point to the point where you were hit how far had you traveled?
“A. About half a block.
“Q. About half a block?
“A. Yes.
“Q. You were hit just then?
“A. After I got across the highway. I had my turn signals and all on to make my turn.
“Q. You were just as you crossed the — ■
“A. About half a block.
“Q. How far are you talking about, a half a block, how far are you from the back of this Courtroom with relationship to a block, what part of a block is that, a whole block or what? .
“A. I imagine it was about a block.
“Q. From where you are to the back of the Courtroom is about a block?
“A. A block or a little bit more.
“BY THE COURT:
That’s about thirty-five feet back to that wall from where you are sitting?”
Beatty produced his wife and mother of his child who testified she objected to her husband taking the children with him on the night in question, because he had been drinking and presumably was intoxicated. Upon objection by Defendant, the court refused to let her testify because no allegation of intoxication was made in the joint petition.
The attempt to introduce this evidence accentuates the motive of Beatty and his wife to prove his negligence to effect recovery from Defendant insurer in behalf of their minor child, even to the extent of establishing a criminal act on his part in driving a motor vehicle while intoxicated (LSA-R.S. 14:98).
The trial judge in dismissing Plaintiff’s suit thoroughly discussed the issues in his “Reasons for Judgment” from which we quote:
“The case was tried and after trial, reopened by the Court for additional testimony.
“On the original trial the only two factual witnesses were Beatty and Captain Ebeir of the State Police. The only evidence of negligence was Beatty’s testimony that he did not know how fast he was traveling, except that he was exceeding the. speed limit, and his speed could have been 50 to 80 mph, ‘as far as I know.’
“Beatty testified that the truck suddenly appeared 3(Y to 40/ in front oi him without lights, was unable to pull *115 to the right or to the left on account of traffic; that he applied his brakes immediately and the accident resulted.
“There was no evidence of whether the truck was moving or stopped, or where it came from. Plaintiff’s two factual witnesses gave contradictory evidence as to where in the roadway the accident occurred. Beatty testified He was in the left lane (of the 4-lane highway, two lanes for traffic in each direction) and Ebeir testified, from debris at the scene, that the accident occurred in the right lane.
“Mrs. Beatty attempted to testify that her husband was intoxicated but objection to this evidence was maintained as such facts were not alleged. Also, she attempted to show that her husband’s mental condition when he left home with these children on a 90-mile automobile trip was not conducive to safe driving.
“The Court was completely dissatisfied with the evidence. It is difficult to understand how anyone could be unable to distinguish between speeds of SO and 80 mph on a crowded highway. Also the Court simply does not believe that any mother would permit a drunk or otherwise incompetent husband to take her 2-year old child and another child of 3, which was in the mother’s care, on a long automobile trip.
“The Court was of the impression that Beatty believed all he had to establish to recover was that he was speeding. And the Court was far from satisfied with his testimony in this respect. In fact, had he been traveling at the legal rate of speed he could not have stopped in 30' to 40' at 35 mph on a wet road, and the accident would have resulted.
“The testimony of the truck driver, Daigle, convinces the Court that his negligence was the proximate cause of the accident. Daigle entered the highway from the west or river side, crossed the two lanes of traffic toward New Orleans and turned into the lane nearest the shoulder headed toward Baton Rouge. He testified he traveled approximately one/half block before being struck from behind on the right side of the rear end of his truck. He estimated the length of a block as the distance from the witness chair to the rear wall of the courtroom — a distance of approximately 35'. (The Court room is 39T" long and witness chair approximately 4' from the wall).
“The short distance he traveled is corroborated by his testimony with respect to shifting gears. He testified the truck was in second gear, that he had just shifted when struck, and that he shifted gears while crossing the highway. Daigle’s testimony is confusing and he contradicts himself. But, his estimate of distance corroborates Beatty’s estimate. Daigle simply turned into the path of the approaching Beatty vehicle, which he did not see.”
Plaintiffs argue that even though Daigle, driver of the dump-truck, was guilty of primary negligence, Beatty was guilty of contributory negligence; hence, Beatty,, while not liable to his co-tort-feasor, was. liable to his guests (the two children), if he was guilty of negligence which contributed to the collision. Malone v. American Hardware Mut. Ins. Co., La.App., 111 So.2d 867; Maloz v. New Orleans Public Service, La.App., 65 So.2d 339; Theriot v. Tassin, La.App., 146 So. 729.
 It is true that judicial admissions, against interest are the strongest evidence. However when, as in this case, the admissions are made for self-interest, as made-here by Beatty to recover for his minor daughter against his insurer, such admissions must be looked upon with grave suspicion and askance, even as prima facie-evidence.
*116 The trial judge, mindful of the fact that the rights of minors were involved, reopened the case to take the testimony of the truck driver, Daigle, who was not made a party to the suit, nor produced to testify at the original hearing. After hearing Daigle’s testimony, the trial judge was thoroughly convinced that Daigle’s negligence was the sole and proximate cause of the accident.
We agree with the trial judge that the accident was due to the sole and primary negligence of Daigle. We also conclude from Beatty’s testimony, even though he persistently sought to establish his negligence, that Beatty was confronted by an emergency not of his creation, but created by Daigle when he suddenly entered the highway in front of Beatty’s approaching car; and that Beatty, in spite of his protest to the contrary, sought to avoid the collision as best he could without avail. In such a case he would not be liable under our jurisprudence. Welch v. Welch, La.App., 169 So.2d 713 and the cases cited therein.
The judgment of the District Court in favor of Defendant is affirmed; Plaintiffs to pay the costs in both courts.
Judgment affirmed.