**PARKS v. HALL et al.***
No. 5439.

Court of Appeal of Louisiana.  Second
Circuit.
June 1, 1937.

Rehearing Granted June 30, 1937.

Writ of Certiorari and Review Granted
Feb. 7, 1938.

*Judgment annulled —— So. ——.

Sholars & Gunby and G. Allen Kimball, all of Monroe, for appellants.

McHenry, Lamkin & Lamkin, of Monroe, for appellee.

HAMITER, Judge.

A Chevrolet sedan driven by Harvey Hall and owned by M. L. Gans collided with a Model-A Ford sedan belonging to Isom Parks and operated by Edward Parks, and also with a Ford V–8 coupé owned by Carbons Consolidated, Inc., and driven by Howard W. Montgomery. This three-car collision occurred at a curve on U. S. highway No. 80 in Ouachita parish, La., on the afternoon of August 22, 1936.

Edward Parks brought this suit against Harvey Hall, M. L. Gans, and the Phoenix Indemnity Company, the latter being the liability insurer of the Chevrolet sedan, to recover damages for personal injuries sustained by him in the accident.

A similar suit, being Hall v. Hall, 179 So. 877, on the docket of this court, was instituted by Arzellous Hall, an occupant of the Model-A Ford, against the same defendants. Injuries received by him form the basis of that suit.

The V–8 and the Model-A Fords were severely damaged in the collision and their owners also filed separate actions against said defendants to recover therefor, these being 179 So. 877, and 179 So. 878, on the docket of this court.

The allegations of the various petitions respecting the manner of the occurrence of the accident and the asserted liability of defendants are substantially identical. As is usual in suits of this nature, Harvey Hall is charged with the negligent operation of the vehicle which he was driving. All plaintiffs also allege that at the time of the collision Harvey Hall was employed by M. L. Gans as a chauffeur; that he was acting in the legal discharge of his duties and within the scope of his employment and while on business and a mission of his employer; and that the Chevrolet sedan was insured against property damage and public liability under a policy written by the Phoenix Indemnity Company. In the alternative, the petitions recite that, if defendant Harvey Hall was not acting in the scope and course of his employment, he was driving said automobile of defendant M. L. Gans at the time of the accident with the consent and permission of said owner.

Defendants Gans and the Phoenix Indemnity Company, in their answers, admitted the occurrence of the collision and that Harvey Hall was employed by the former on August 22, 1936. They deny, however, all liability for any negligent acts committed by him. An affirmative averment is made by them that "the use of the said automobile by Harvey Hall was unauthorized and in violation of the prohibitory instructions of M. L. Gans."

No appearance was made by defendant Hall in any of the cases, and preliminary defaults were regularly entered against him.

The cases were consolidated in the district court and a trial was had on their merits. Plaintiff in each suit was granted a solidary judgment against all defendants. From these, suspensive appeals were perfected by defendants Gans and his insurer. No appeals were prosecuted by Harvey Hall. The judgments against this last-mentioned defendant are therefore not before us for review.

There was in full force and effect at the time of the accident a policy of insurance covering the Chevrolet sedan and written by defendant Phoenix Indemnity Company. The "named assured" therein was M. L. Gans and/or Bradford Norton, Inc., and/or Spiegel Brothers. Under this policy said insurer agreed: "To pay, within the limits specified in Statement Three, the loss from the liability imposed by law upon the assured for damages (including consequential damages) on account of bodily injuries, including death resulting at any time therefrom, suffered or alleged to have been suffered by any person or persons as the result of such accident."

It further agreed: "To pay, within the limits specified in Statement 3, the loss from the liability imposed by law upon the assured for damages on account of damage to or destruction of property, including the resultant loss of use thereof, * * * resulting from such accident."

The contract also provided: "The term 'named assured' shall mean only the assured specified in Statement One, but the term 'assured' shall include the named assured and any other person while riding in or legally operating such automobile and any other person or organization legally re-

sponsible for its operation, provided: (a) It is being used with the permission of the named assured, * * *."

This last-mentioned provision is usually known as an omnibus clause.

The evidence is overwhelmingly convincing that defendant Harvey Hall was negligent in the operation of his employer's car at the time of the accident, and that his negligence was the proximate cause of the unfortunate event. Recognition of this was given by defendants' counsel through their failure to discuss the question of negligence either in brief or in oral argument. Also, it does not appear that there was contributory negligence on the part of any one operating or riding in the other two cars. Therefore, no further discussion will be made herein of this phase of the cases.

As we view the record, two questions are presented for consideration: (1) Was Harvey Hall acting within the scope of his employment at the time of the accident? (2) If not, was he legally operating and using the automobile with the consent of his employer, M. L. Gans, within the meaning and intendment of the provisions of the above-quoted omnibus clause?

Defendant M. L. Gans was a traveling salesman in the employ of Bradford Norton, Inc., of Birmingham, Ala., and Spiegel Brothers of Chicago, Ill. He resided in the City of Monroe, La. The Chevrolet sedan was used by him in the pursuit of his occupation of selling merchandise to customers in a particular trade area. For a period of about six years Harvey Hall had been engaged as his chauffeur and helper. The duties of the latter throughout each week were to drive his employer's car and help him pack and unpack samples. When Mr. Gans returned from his route on the week ends, which was usually on Saturday mornings, it was customary for and required of the chauffeur to drive the car to Massey's Main Service Station, located on the corner of Jackson and Telemaque streets, and wash and have it greased and to return it to the owner at his home or some other designated place. Arrangements had been made by Mr. Gans with the service station operator for Harvey Hall's use of a wash rack in his cleaning of the car. If the rack was occupied when the chauffeur arrived, he would sometimes wait there until it was available, at other times he would drive away and return later, while on two or three previous occasions he proceeded to Massey's Service Station No. 2, situated at 2800 Desiard street, and used the rack there. This weekend washing and greasing of the car had been faithfully performed for a period of more than four years. Usually the chauffeur was paid his weekly wages at noon each Saturday.

Defendant Gans did not permit his chauffeur to use the car for the latter's personal use. Permission for such use had been requested several times, but it was always denied. This was because the car was employed solely for business purposes, that is, in traveling over the trade territory, and a serious damage to it would deprive the owner of a means of conveyance until repairs could be made. Repeated instructions had been given the employee that the car was to be used only in connection with the employer's business.

On the morning of August 22, 1936, Mr. Gans entered the Chevrolet at his home and traveled with his chauffeur to the Virginia Hotel in Monroe. He arrived there shortly after 9 o'clock. On descending from the car, he instructed the chauffeur to go to the service station and perform the customary washing, obtain some parcels from the express office, and then return the vehicle to the owner's home. Permission was granted at the time for the washing of the machine at the Desiard street station, No. 2, if the rack at the main place was occupied.

When defendant Hall appeared at the last-mentioned station a few minutes later, the rack was not available; so he drove away. There is nothing in the record which discloses his movements from that time until about 2 o'clock in the afternoon. At that hour he arrived at a house situated at 309 Eighth street and occupied by three women named Ophelia Murray, Gertie Johnson, and Ora Lee Jones. In the car with him was another man named Walter Hollins. Hall invited Ophelia Murray to accompany him to Frizzell's Brick Yard, which was located approximately 8½ miles east of the parish courthouse in Monroe, and she in turn invited the other women. On their way out of the city, and shortly after 2 o'clock, the car was stopped at Massey's Service Station No. 2 on Desiard street. Defendant Hall got out of the car and asked the station attendant if his employer had called for him, and left a message to be delivered. The wash rack there was then available for his washing

the car, but it was not so used. Instead, he resumed his position in the vehicle and drove east on Desiard street away from Monroe toward and to the aforementioned brickyard. He was accompanied by the three women and Walter Hollins.

After remaining at that place for 15 or 20 minutes, the party commenced their journey back to the city. While returning, and at a point on the highway about 4½ miles east of the above-mentioned courthouse and 2 miles east of Massey's Service Station No. 2, the collision occurred. Emerging from the Chevrolet immediately after the accident, were the defendant Hall and the three women. The other passenger, Walter Hollins, was in an intoxicated state, and, according to one of plaintiffs' witnesses, "he was so drunk he couldn't get out."

Mr. Gans neither directed, authorized, nor had previous knowledge of his chauffeur's contemplated trip to the brickyard. Its location was unknown to him, and he had no business to be transacted there. Furthermore, he did not see the employee after he departed from the hotel until subsequent to the accident.

■ When plaintiff proved that the Chevrolet sedan was owned by defendant Gans, and that Harvey Hall, its driver at the time of the accident, was in the owner's general employ, the presumption was raised and a prima facie case was made out that he was acting within the scope of his employment when the collision occurred. It was then incumbent upon the employer to rebut this presumption with positive proof. Middleton v. Humble, La.App., 172 So. 542; May v. Yellow Cab Co., 164 La. 920, 114 So. 836; Johnson v. Jim Brownlee, 13 La.App. 86, 127 So. 127.

■ This obligation was discharged by such employer, however, when he proved unmistakably that the chauffeur ignored the specific instructions given him, deviated from his master's business, and departed on a separate and independent mission of his own. The burden then shifted back to plaintiff to prove that the independent venture of the employee had terminated and that the latter had re-entered and resumed his service with the employer when the cars collided, Glass v. Wise & McAlpin, 155 La. 477, 482, 99 So. 409, 411; 9 Blashfield's Cyclopedia of Automobile Law, § 6138.

For the purpose of meeting this last-mentioned burden, plaintiff's counsel offered only the testimony of the chauffeur Hall, who is a defendant in the case, elicited under cross-examination pursuant to the provisions of Act No. 126 of 1908, as amended by Act No. 115 of 1934. This testimony was duly and timely objected to by defendants M. L. Gans and Phoenix Indemnity Company, through their counsel, as not being admissible and binding on them. The objection was overruled.

Defendant Hall first testified that he obtained the car with Mr. Gans' consent, and carried it to Massey's Service Station No. 1 on Jackson street for the purpose of washing it. On finding the rack occupied, he went to Eighth street, picked up the three women, and then commenced the journey to the brickyard. On the way he stopped at the Desiard street, or No. 2, service station of Mr. Massey, and left a message for his employer if he should call. After leaving the brickyard and on the occasion of the accident, he was proceeding to the home of the women to return them there.

Although plaintiff's counsel reminded him of statements which he had previously made regarding his immediate destination on the return trip, he insisted that, "he was intending to bring the girls home, and then wash the car."

Later, after being admonished by the trial judge, at the request of plaintiff's counsel, to answer the questions truthfully, and after being warned of the consequences on his failure so to do, he stated that, if the rack was not occupied he intended to wash the car, with the aid of Walter Hollins, and the women would wait in accordance with an agreement made with them; but if it was not available, he was going to take them home first.

Another place in the transcript we find him testifying that he was going to the Desiard street station to see whether or not the rack was empty. He "had to pass right by there, on the way back. It was right on the way." If it was empty, he intended to wash the car there "if the girls would agree to stay with me." Finally, he affirmed, as being true and correct, statements made previous to the trial of this case, that he was on his way back to the Desiard street station to wash the car and the people would stay with

him as the washing would require only 30 minutes or less.

Counsel for defendants Gans and Phoenix Indemnity Company requested the right to examine the witness Harvey Hall. This was denied by the trial court for the reason that the witness was called for cross-examination by the plaintiffs.

We think that the trial court erred in overruling the objection urged by the employer and his insurer, and that defendant Hall's testimony, in so far as they were concerned, should have been excluded. Under the provisions of Act No. 126 of 1908, as amended by Act No. 115 of 1934, a litigant may examine his opponent, as under cross-examination, and the testimony elicited is binding on the witness. But such litigant is not granted the right by that statute to obtain testimony under cross-examination from one defendant for use against and to bind his codefendant. Edwards Bros. v. Berner, 154 La. 791, 798, 98 So. 247; Borne-Norris Hardware & Supply Co. v. Ballantyne, 5 La.App. 82, 83.

The testimony of defendant Hall given under cross-examination being inadmissible against and not binding on his codefendants, the only competent proof in the record regarding the employee's destination at the time of the accident is that furnished by the three women who accompanied him. Ophelia Murray testified that she "thought he was bringing us back home." The others were positive that they were "on their way back home." If, therefore, the chauffeur was at the time of the accident journeying to the home of the women to discharge them, and this must be concluded as a fact in view of the lack of competent evidence to the contrary, and the above affirmative proof in favor thereof, there had been no resumption of his duties to his master. He was still in the enjoyment of his independent and separate mission, which was the conveying of his friends from the house on Eighth street to the brickyard and return. A re-entrance into his master's service would not have begun until their discharge at that house and the commencement of his trip to the service station.

If it could be held that defendant Hall's testimony was admissible as against his codefendants, still the conclusion must be reached, from the record as made up, that said chauffeur was journeying to the home of the women at the time instead of to the service station. The testimony given by him has little probative or evidential value because of his vacillation in testifying, to which we have above referred; while opposed to it is the proof furnished by the three women. Furthermore, it is unreasonable to believe that he intended to cause his female companions to await the washing of the car or expected to obtain any assistance from Walter Hollins who was almost totally incapacitated because of having imbibed too freely of strong drink.

In support of their contention that Mr. Gans is liable for the negligent act of Harvey Hall, plaintiff's counsel rely on the cases of Gilbert v. Trotter et al., La.App., 160 So. 855, 858; Bowles v. McGlasson, 5 La.App. 367; Cusimano v. A. S. Spiess Sales Co., 153 La. 551, 96 So. 118; and Glass v. Wise & McAlpin, supra. The driver of the car in the Gilbert Case was charged with the duty of picking up workmen in Monroe and transporting them to the compressor plant of his employer in Richland parish. He turned aside from his work one night and drove the machine onto a certain street with the view and purpose of locating one of his cousins. After satisfying himself that the cousin did not live on that street, he decided to abandon his private mission and attempted to reverse the course of the vehicle for the purpose of performing the duties of his employment. In the execution of this maneuver, his car struck the front porch of a house occupied by plaintiff. The accident resulted in injuries to her and she sued to recover damages. In our opinion we said: "Therefore, while he momentarily turned aside from his master's business to engage in a personal mission, we think he re-entered the master's employ, and his status as its servant was immediately resumed, when he decided to abandon the deviation and turned the car around for the purpose of performing the duty to the master he was employed to perform."

The chauffeur in the Bowles Case was authorized to drive his employer's nurse to her home. Before his return to his master's dwelling a deviation from the course of his employment occurred. The court, in its opinion, described this and held as follows: "It must be admitted that when the chauffeur, Coleman, started

to drive Miss Gage, the defendant's nurse, from the defendant's residence to her own home he was acting within the course of his employment and in the interest of the defendant and with his permission. It may be assumed that after he reached the nurse's home and when he drove the automobile to the hospital, and thence to his cousin's residence on Dryades street, that he ceased to be acting for defendant and began to act for himself. But as soon as he left his cousin's house and turned his car back towards its garage at defendant's home, then he resumed his employment, for it was his duty to return the car to the garage at his employer's home and he was so doing."

In the Cusimano Case, the chauffeur was sent out by his employer to deliver some goods. While on this journey, he embarked on a mission entirely of his own choosing. After accomplishing his errand, he proceeded either on a continuation of his deliveries or a return to defendant's store, during which time his negligent driving caused serious injury to plaintiff. The court found that he was engaged in his master's business when the accident occurred.

In the Glass Case, the employee, without the knowledge or consent of his employer, drove the latter's truck from its business establishment to a certain place for the purpose of obtaining some meat for a friend. While returning, and also on his way to deliver the meat, an accident occurred and a third person was injured by the vehicle. It was held that at the time of the accident the employee was still engaged in his independent venture. In its opinion, the Supreme Court said:

"The meat was not delivered—the independent mission was not completed—when the accident occurred. When the chauffeur started on his return trip, his independent mission was only half completed, and was not wholly completed until delivery of the meat was made, which was after the accident. Nor can it properly be said that on the return trip there was a combined purpose to complete the mission for Volney Mitchell and to engage in the defendant's business. The return trip with the meat had to be made; it was a duty to Volney Mitchell which the chauffeur had assumed. We cannot in the absence of any testimony to that effect, presume that the chauffeur intended to de-liver any groceries before discharging his duty to Volney Mitchell.

"The fact having been established that Mitchell had abandoned his employer's business the very moment that he started on the mission for Volney Mitchell, the burden was with the plaintiff to show that the independent errand had been accomplished, and that the servant was returning to resume his service with his employer; and this the plaintiff has failed to do."

The comparatively recent case of James v. J. S. Williams & Son, 177 La. 1033, 150 So. 9, 13, decided by the Supreme Court, called in question the respondeat superior doctrine and presented for consideration a situation where a chauffeur's negligent operation of his master's car, driven without the latter's permission, caused injury to a pedestrian. Mr. Justice Odom, as the organ of the court, discusses extensively the jurisprudence of this and other states respecting the master's liability in a situation of that kind. In referring to the case of Glass v. Wise & McAlpin, supra, he stated: "The court, in the Glass Case, did not intend to enlarge the doctrine announced in the Cusimano Case, which is in line with the rule followed in the other states, and is that where a servant is sent out by the master on a mission pertaining to his business, and, while out, the servant departs wholly from that mission and goes upon one of his own, the relationship of master and servant is temporarily suspended during the performance of the servant's private mission; but when the servant turns and resumes the work which he was sent out to do, if that be nothing more than return the vehicle, he re-enters his master's employment, and the liability of the master for his torts reattaches."

If the record disclosed that at the time of the accident Harvey-Hall was on his way to the service station to wash the Chevrolet, counsel's contention that there had been a resumption of his duties for his master might be meritorious in view of the doctrine announced in the afore-discussed cases. But, as we have previously said herein, there is no such disclosure. The burden which plaintiffs carried has not been discharged.

Masters and employers are answerable for the damage occasioned by their servants while in the exercise of the functions

in which they are employed. Rev.Civ. Code, art. 2320. When the accident occurred, Harvey Hall was not performing the duties of his employment, but was engaged in a venture wholly unconnected with the business of his master. Consequently, there is no liability on the part of employer Gans for the negligence of his chauffeur. Likewise, the insurer is not liable, unless it be by reason of the provisions of the above-quoted omnibus clause of the policy.

As plaintiff's counsel suggests in their brief, the determinative question, with reference to the matter of the insurer's liability under the clause just mentioned, is "whether at the time of the accident Harvey Hall was using the automobile with the permission of his employer." If this be answered in the affirmative such insurer is liable; if otherwise, there is no responsibility on its part.

Testimony was given by Gans under cross-examination that Harvey Hall was using the car with his consent on August 22, 1936, and was permitted to have possession of it until the washing was completed. However, he further testified, and the record conclusively shows, as we have herein previously stated, that no permission was ever granted his chauffeur to operate the car for his personal use; that repeated instructions had been given that the car was at all times to be employed only in the interest of the employer's business; and that a specific task had been assigned to him on his departure from the hotel, but instead of performing that task, he went on a personal mission and was still in the pursuit of it when the accident took place. Under these circumstances we are forced to conclude that employee Hall was not using the car on the occasion of the collision with the permission of the named assured within the meaning and intendment of the omnibus clause.

If the chauffeur, after finding the rack at the main service station occupied, had operated the car in the vicinity of that place for the purpose of awaiting his opportunity to wash it, and while so doing the accident occurred, it might be said that the necessary permission existed. But a situation of that kind is not here present. In the instant case, Hall, upon ascertaining that the rack was in use, departed upon a venture entirely of his own and altogether foreign to the business and violative of the instructions of his master. After securing his friends, he commenced and proceeded on his journey of some 8 miles into the country. On return-ing and while still engaged on his separate undertaking the accident happened.

There was an intentional and complete departure from the duties of his employment when the chauffeur entered upon and continued his trip. This is borne out by the fact that there was an available rack at the service station No. 2 on Desiard street where he momentarily stopped, and he could have cleaned the car there if he had so desired. And it does not matter whether his destination was a distance of 8 miles from Monroe or that of 608 miles. For the sake of argument, suppose that his journey had been to Chicago, Ill., where he remained a week; and, while on the trip back to Monroe to return his friends to their home, the accident occurred in the state of Tennessee. Under this hypothesis could it be correctly said that at the time of the accident Hall was using the car with his employer's permission? We think not.

A somewhat similar policy provision was involved in Stephenson v. List Laundry & Dry Cleaners, Inc. et al., 168 So. 317, 320, decided by us. Therein a truck, which was covered by the policy, was sent to the garage of the Shreveport Laundries, Inc., for the receiving of repairs. No authority for its operation while there was given by the named assured. An employee of the garage, while using it in the hauling of trash, allegedly caused injury to a third person. In our opinion we said: "As we have heretofore stated, the uncontroverted evidence discloses that the trucks were brought to the garage of the Shreveport Laundries, Inc., for the purpose of having new motors installed, and that no one had authority to operate them while here. This, we think, is conclusive of the fact that no consent, either express or implied, was given by the insured for the use of its truck in the hauling of the trash for the Shreveport Laundries, Inc. It is well recognized that where express permission is granted for a given purpose, permission for all purposes cannot be implied. Huddy's Automobile Law, Vol. 13–14, page 407; Trotter v. Union Indemnity Co. (C.C.A.) 35 F.2d 104; Frederiksen v. Employers' Liability Assurance Corporation (C.C.A.) 26 F.2d 76. There is, therefore, no liability on the part of the insured herein."

Under a writ of review issued by the Supreme Court, 186 La. 11, 171 So. 556, 558, in the Stephenson Case and directed to us, that tribunal approved our holding and stated:

"The Court of Appeal found that no one had authority from the assured, express or

implied, to use the truck, for any purpose, while it was in the garage of Shreveport Laundries, Inc., solely for the installation of a new motor. We are not concerned with the possible liability of Shreveport Laundries, Inc., for that corporation is not involved in this suit. The Court of Appeal cites authorities supporting the rule that even where express permission is granted for a given purpose, permission for other purposes cannot be implied."

It is to be observed from the last-mentioned quotation, that the authorities relied on in our above referred to opinion are impliedly, if not expressly, approved by the Supreme Court.

The federal Circuit Court of Appeals of the Ninth circuit held in Frederiksen v. Employers' Liability Assurance Corp:, supra, that, where the named assured gave permission to a friend to take his automobile for the purpose of going to an early morning funeral within the city, the friend's operation of the vehicle during the afternoon and while the car was still in his possession, in taking a joy ride many miles beyond the city limits, was not with the permission of the named assured within the meaning of the omnibus clause of the policy.

The case of Denny v. Royal Indemnity Co. et al., 26 Ohio App. 566, 159 N.E. 107, is persuasive. The Cleveland Cadillac Company, an automobile sales agency, carried a liability policy on its cars. Insurer was liable under the policy whenever injury was done by one of its vehicles while being used by any person with its permission, express or implied. Lish, an employee of the insured, had a definite duty to perform each day. This was to take the mail of the company in one of its cars to the post office, then go to certain docks, and immediately thereafter return to the place of business. On a particular day he left the office for the purpose of performing his designated duty, but instead of discharging it he proceeded eastward several miles out of his way to carry on business of his own, and, while doing so, the injury occurred for which the suit was brought. The court held that at the time of the accident Lish was using the car without the insured's permission.

In support of their theory of the case, plaintiff's counsel cite and rely primarily on the cases of Dickinson, Administrator, v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500; Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368; Theriot v. Tassin et al., La. App., 146 So. 729, 730; and Zuvich v. Ballay et al., La.App., 149 So. 281, 284.

The Dickinson and Stovall Cases, to both of which we have given studious consideration, are from jurisdictions outside of Louisiana. Even if it should be considered that the doctrine therein announced is in conflict with our holding in this case, we are in no manner bound by it. It is only persuasive. Accordingly, a discussion herein of those cases will serve no useful purpose.

The two remaining cited cases, both of which are from Courts of Appeal of this state, do not, in our opinion, do violence to our conclusions herein. In the Theriot Case, decided by the First circuit, we find:

"The evidence shows that George Tassin and R. D. Coleman were riding about Lake Charles in an automobile belonging to Coleman. Tassin suggested to Coleman that he lend the automobile to him, Coleman agreed and got out of the car, and delivered it to Tassin. Tassin borrowed the automobile for the purpose of taking a young lady friend for a ride. The only stipulation made in the contract of borrowing, according to Coleman, was that Tassin was to meet him with the car and let him have it back at approximately 11 o'clock p. m. of the night in question, which was November 6, 1931. Coleman admits that there was nothing said as to where the car was to be driven. He loaned and delivered the automobile to Tassin, evidently knowing that he (Tassin) contemplated taking some friends for a ride. * * *

"The evidence indicates that the parties did not understand that a strict enforcement of the time when the car was to be returned was in the mind of either party. * * *

"The evidence shows that the accidental overturning occurred at about 10:30 p. m. Therefore, according to Coleman, and also according to Tassin, the loan agreement was in force and effect at that time, and the fact that Tassin could not get the car back to Lake Charles by 11 o'clock p. m., approximately stated, did not avoid nor set aside the permission under which he had the right to the use of the car at the moment of the accident, nor avoid the legal consequences growing therefrom. We therefore hold that the surety company is bound by the permission which was in force and effect at the time of the accident, although it was impossible to get the car back to Lake Charles by 11 o'clock or approximately thereto."

The facts in the Zuvich Case are that one Ballay loaned his car, which was covered by liability insurance, to J. P. Hingle, Jr. The policy contained an omnibus clause. Plaintiff received injuries when he was struck by the car while operated by Hingle, and sued for damages. In awarding judgment against the insurance company, by reason of the omnibus clause of the policy, the court said: "Counsel for the insurance company contends that the omnibus clause of the policy has no application here because Hingle, at the time of the accident, was not, in truth, using the car with the permission of the owner. This contention results from the fact that, when Hingle borrowed the car, his primary purpose was to return to her home his friend or 'date.' But the evidence on that point leaves no doubt that Ballay had no intention of limiting Hingle's use of the car to that one mission and that he gave Hingle full permission to use it for such purposes as might suit his (Hingle's) convenience, requiring only that the car be brought back in sufficient time to permit Ballay to take his own 'date' home."

For the reasons hereinabove set forth, we think that there is no liability in this cause on the part of defendants M. L. Gans and Phoenix Indemnity Company.

Accordingly, the judgment of the trial court, in so far as the defendants mentioned in the preceding paragraph are concerned, is set aside and reversed, and plaintiff's suit is dismissed at his cost in both courts.

DREW, Judge (dissenting).

I respectfully dissent from the majority opinion in this case for the reason that I am of the opinion that the omnibus clause in the insurance policy covers the case and makes the insurance company liable thereunder. In my opinion the driver of the car causing the damage was lawfully in possession of same at the time of the accident.

On Rehearing.

TALIAFERRO, Judge.

■ The application for rehearing herein is addressed solely to alleged error on our part in rejecting plaintiff's contention that the insurer defendant is responsible to him for the damages sued for under the omnibus clause of the insurance policy carried by defendant Gans. In other respects, the former judgment of this court, the findings of fact and conclusions of law upon which it is based, are acquiesced in by plaintiff.

We found and held that Harvey Hall, the chauffeur of Gans, at the time of the accident with Gans' car, had deviated from his master's employ and was on a private mission of his own. Therefore, it followed that Gans could not legally be held responsible for the results of the accident under the doctrine of respondeat superior. The question propounded by plaintiff's remaining contention is whether the car, at the time of the accident, was being used with the "permission" of Gans, the assured. The facts pertinent to this issue and the reasons forming the basis of our rejection of this contention are elaborately set out in our original opinion. After further studious consideration of the case and copious briefs of both sides, we are unconvinced of error in our prior conclusions as regards this question. It is true that Hall was not unlawfully in possession of the car when the collision occurred. It had been intrusted to his keeping for a restricted purpose. He was not warranted in using it otherwise. We do not think responsibility vel non in cases of this character is to be determined exclusively from the nature of the incipiency of the original possession.

There is definite lack of uniformity in the jurisprudence of the various states wherein this question has been embattled. The omnibus clause, such as we are now discussing, is but ten years old. In some states, seemingly, it has not been judicially interpreted. Due to the youth of the clause, it is not surprising that there should exist so much difference of opinion concerning its operative effect when applied to different state of facts. The majority view is to the effect that "permission means a consent to use the car at the time, place and under the circumstances of the accident." In other words, that the question does not recur upon nor is it to be always determined by the character of permission originally given. We think this the more rational interpretation of the clause. The question has not definitely been passed on by the Supreme Court of this state.

■ In the present case, the employer's instructions to the servant, Hall, were not susceptible of misunderstanding. These were specifically prohibitory in purpose and effect. Hall was not to use the car in any manner or to any extent for his personal and private affairs. Prohibition is the antonym of permission. To hold that the car was being operated at time of the

 

accident with Gans' permission is tantamount to holding that Hall had the power to convert a prohibition into a permission. The unambiguous language of the omnibus clause is not susceptible of such a construction.

For the reasons herein assigned, the former judgment of this court is reinstated and made final.

DREW, J., dissents.

the car causing the damage was lawfully in possession of same at the time of the accident.

Sholars & Gunby and G. Allen Kimball, all of Monroe, for appellants.

McHenry, Lamkin & Lamkin, of Monroe, for appellee.

DREW, Judge (dissenting).

I respectfully dissent from the majority opinion in this case for the reason that I am of the opinion that the omnibus clause in the insurance policy covers the case and makes the insurance company liable thereunder. In my opinion the driver of the

*Judgment annulled — So. —.