## BROWN et ux. v. INDEMNITY INS. CO. OF NORTH AMERICA et al.

### No. 5580.

Court of Appeal of Louisiana. Second Circuit.

Jan. 28, 1938.

Jack & Jack, of Shreveport, for appellants.

Lester Wilson and Irion & Switzer, all of Shreveport, for appellees.

DREW, Judge.

This cause arose out of an automobile collision. The suit is brought by Herbert W. Brown and his wife against Charles J. Elston, the driver of a car owned by Morris-Buick Company, Inc., his employer, who is also made a party, as well as defendant's insurer. Plaintiffs prayed for damages, in solido, against all the defendants in the amount of $17,440.60, with legal interest thereon from judicial demand until paid. The damages are alleged to have been incurred when a car owned by Morris-Buick Company, Inc., and driven by its employee, Elston, within the scope of his employment, negligently ran into a car in which plaintiffs were riding.

It becomes unnecessary to state the allegations of negligence charged to Elston for the reason that his negligence is admitted here, and is admitted to have been the proximate cause of the accident and resultant injuries to plaintiffs.

The lower court rendered. judgment in favor of plaintiffs in the sum of $438.30, for Herbert W. Brown, and in the sum of $1,000 for Mrs. Herbert W. Brown against Charles J. Elston. It rejected the demands against the other two defendants, finding that at the time of the accident Elston was on a mission of his own and was not performing the duties within the scope of his employment or in the interest of his employer. It is admitted by all parties to this suit that the amount of the award made by the lower court is correct, and Elston has not appealed. The only appeal prosecuted was one by plaintiffs from that part of the judgment rejecting their demands against Morris-Buick Company, Inc., and its insurer.

The insurance policy does not contain the omnibus clause. Plaintiffs and defendants agree that the only question to be determined by this court is whether or not Charles J. Elston, the driver of the automobile, owned by Morris-Buick Company, Inc.,

was at the time of the accident using the automobile within the course of his employment as an automobile salesman. The rule of law applicable to the case is succinctly stated in the case of Parks v. Hall, 179 So. 868, originally decided by this court on June 2, 1937, and reaffirmed on rehearing January 3, 1938. The rule laid down there is: "When plaintiff proved that the Chevrolet sedan was owned by defendant Gans, and that Harvey Hall, its driver at the time of the accident, was in the owner's general employ, the presumption was raised and a prima facie case made out that he was acting within the scope of his employment when the collision occurred. It was then encumbent upon the employer to rebut this presumption with positive proof. Middleton v. Humble, La.App., 172 So. 542; May v. Yellow Cab Co., 164 La. 920, 114 So. 836; Johnson v. Brownlee, 13 La.App. 86, 127 So. 127." Parks v. Hall.

■ To find whether the employer has successfully rebutted this presumption or not, involves purely and simply a finding of fact. The lower court, in a written opinion, found on this question the facts to be as follows:

"Therefore, we must determine from the evidence whether Elston was at the time of the accident actually performing a duty for the Morris-Buick Co. Inc., within the scope of his employment.

"Elston had been for some months an employee of the Morris-Buick Company, and at first sold new cars and used a demonstrator car, but at the time of the accident was employed as a 'used car' salesman, without either owning or having the use of a company car for demonstration purposes. It is shown that the salesmen work from 8 A. M. to 6 P. M.; that no used car could be taken off of the premises without the consent of the manager and then only to show to a definite prospect; and that all cars were to be returned to the place of business by six o'clock, but this latter rule was not strictly enforced. On the day in question, Elston told his manager that he wanted a certain car that evening as he had a prospect for a sale; that his prospect was Miss Owens, who lived in Bossier City, and that he could not see her until after 6 o'clock, as she was employed during the day. With this understanding, the manager permitted Elston to take the automobile involved in the collision off the lot at about 5:30 P. M. Instead of going to Bossier City, which is south and west of

Shreveport, Elston proceeded north on the Mooringsport road to Red Thompson's place, about two miles north of Shreveport. Thompson operates a place of entertainment, serving drinks and food, and at which place a young lady worked, in whom Elston was interested. Elston states that he went there to 'kill time' and time slipped by until seven o'clock arrived, when he left to go to a barber shop for a hair cut, this being on Saturday night and the shops close at 8 o'clock. He left Thompson's place and started back to town to the Barber shop when the accident occurred.

"After the accident, Elston did not stop, but kept on his way until he reached the first red light in Shreveport, at which place Mr. Rosenblath, the driver of the truck around which Elston had gone immediately preceding the accident, caught up with him and told him, Elston, that he had hit some people back there on the road, and, although Elston's fender was smashed, he replied that it was only a fender brush; however, Elston then went and left the car he was driving at the Morris-Buick plant and took another off the lot (no one was there) and went back out on the Mooringsport road to see about the accident. No one was around, so he returned to the barber shop and, after getting a hair cut, went home without doing anything about going to Bossier City to see Miss Owens or a Mr. Tucker, who was to make the date with Miss Owens for him.

"The foregoing statement of the facts is about as testified to by Mr. Elston as to what happened from the time he left Thompson's place until the night was over.

"With respect to the proposed meeting with Miss Owens, Elston stated that Mr. Tucker, an automobile salesman for Roby Motor Company, resided at the same place where Miss Owens lived, and that Tucker was to see Miss Owens that evening and arrange a date with her for Elston, and Elston was to call Tucker after six o'clock and find out if it was satisfactory for him to come over and see her. Miss Owens testified that she had never heard of Mr. Elston and had never seen him; that Mr. Tucker had not made any engagement for Elston and she did not know anything about Elston's intended visit to demonstrate or try to sell her an automobile. Mr. Tucker was not called as a witness by either side. The defendant did not need him, as Miss Owens had testified that Elston's statement about selling her an automobile was incor-

rect. This led the court to state that he was of the opinion, in the absence of Tucker's testimony to the contrary, that Elston did not have any proposed engagement with Miss Owens and that he used this as a subterfuge to obtain the automobile to visit the young lady at Thompson's place, but, be that as it may, it is certain from the evidence that Elston, from the time he left the place of business of Morris-Buick Company and until he had reached the red light inside of Shreveport, was neither returning to Morris-Buick Company's place of business nor was on his way to show the automobile to Miss Owens, or perform any other act on behalf of the Morris-Buick Company; and therefore the company nor its insurer are liable for the accident.

"There is some evidence to the effect that Elston had tried on numerous occasions to sell Red Thompson an automobile, and plaintiff tried to prove that this was the reason for Elston's visit to Thompson's place on that day. It was shown that one of Morris-Buick Company's salesmen ate two meals at Thompson's place; that Elston was a frequent visitor there, as before stated, and we have no doubt Elston had on many occasions asked Thompson about buying an automobile, but Thompson stated that he did not remember whether Elston mentioned it the day of the accident, and Elston stated that he did not. (That he went there to kill time and with no thought in mind of attempting to sell Thompson a car.) Thompson purchased an automobile from the other salesman some six months after the accident.

"There is also some evidence to the effect, and we think it is true, that if an automobile salesman were on his way to see a prospect to show an automobile and ran across someone else before he got there who would buy the automobile, a sale under these circumstances would be agreeable to the Morris-Buick Company, but there is no evidence that Elston was at the time of the accident selling an automobile or on his way to show it to anyone, or looking for someone to show the automobile to; hence all of the testimony along this and similar lines was immaterial to the issue involved here.

"Counsel, in argument, have had a good deal to say about the veracity of the defendant Elston, with which for the most part the court agrees, as he did not impress the court very favorably while on the witness stand, possibly due to his condition at the time he was giving his testimony. However, we have quoted from his testimony herein because without at least a part of his testimony, plaintiffs would be without any evidence material to their side of the case. In short, without Elston's testimony on the scope of his employment, we would find the evidence to be that Morris-Buick Company let him have an automobile to carry to Miss Owens in Bossier City at 6 P. M., and that Miss Owens did not have an engagement with Elston; that Elston, at the time of the accident, was on the Mooringsport road, without authority or permission of the Morris-Buick Company, and thus plaintiffs would have no case against the Morris-Buick Company, Inc."

The record amply bears out its findings.

Plaintiffs contend in their brief, as follows: "If he went up to Red Thompson's to sell the car, the Buick company would be liable. If he did not go to Red Thompson's to sell the car, but had the collision on the return to the Buick company, the Buick company would be liable because by turning back, Mr. Elston had reentered the scope of his employment. He claims that he was on the way back to Shreveport for a dual purpose, namely, to get a hair cut for himself and to call Mr. Tucker about the appointment later in the evening with Miss Owens. We frankly think he was on his way to Bossier City to keep the original, indirect appointment, as he calls it. At any rate, when he turned the nose of his automobile toward Shreveport, he again reentered his employment if there had ever been any deviation."

We think the testimony clearly shows that Elston had not re-entered his master's employment at the time of the accident. His testimony, which is the only testimony in the record on the subject, is that when he left Red Thompson's place, he intended to go to a barber shop in Shreveport and get a haircut, which he did. He telephoned his mother, who informed him that dinner was ready, so he went home, ate his dinner, and returned to Thompson's place to tell him about the accident. He stated he intended to call Mr. Tucker after he had finished with his personal business. It is clear from his testimony that his purpose in returning from Thompson's to Shreveport was to get a haircut before the shops were closed; and that if he ever intended to call Tucker, it was to be only after he had finished his personal business of getting his haircut and eating dinner. He neither called Tucker on the telephone nor did he go to see him.

We are convinced that Elston secured permission from his employer to use the car for a stated purpose which was not the one for which he actually intended using it. This being true, he never legally had the car with the permission of the owner, and was not at any time, after he left his employer's place of business at 5:30 p. m., within the scope of his employment.

Plaintiffs rely upon several cited cases to support their contentions, but since we are of the opinion the difference in the facts of the cases makes them inapplicable, we deem it unnecessary to discuss them in detail.

We find no error in the judgment of the lower court, and it is affirmed, with costs.