Plaintiff, dependent mother of George Barnes, Jr., who at the time of his death on July 26, 1940, was employed by the Wilson Supply Company, a dealer in oil field equipment and supplies, filed this suit for compensation against his employer and its insurer. Defendants admitted the accident and employment, but denied that plaintiff's son was acting in the scope and course of his employment at the time of the fatal accident. From a judgment of the district court holding that her son was not engaged in the business of his employer at the time of the accident and rejecting her demands, plaintiff prosecutes this appeal.
The deceased employee was manager of the defendant supply company's branch office at Magnolia, Arkansas, and also represented the company as a traveling salesman. He lived with his mother at Haynesville, Louisiana, and in the early morning of July 26, 1940, left his home in a company car to drive to Olla, Louisiana, in order to transact certain essential business of the company with a Mr. Crow, who represented a customer, the Penrod Drilling Company. His route lay through Ruston, Louisiana and while there he met a young lady, Miss Aldonza Sookul, a student at Louisiana Tech. She was about to leave Ruston to visit her home at Winnfield and accepted a ride with Barnes to Winnfield, which was on his route to Olla. Barnes proceeded alone to Olla. Finding that Crow was not in town, he spent most of the day with a friend named Miller, who went with him to several places in their search for Crow. About 5:30 in the afternoon he told Miller that he was going to Winnfield to eat and asked Miller to keep a look-out for Mr. Crow and tell him, should he come in, that he, Barnes, "wanted to be sure and see him before he left town."
After leaving Olla, Barnes proceeded to the home of Miss Sookul at Winnfield. She went with him to a cafe about a mile north of Winnfield on the road to Dodson, Louisiana. At the cafe he stated that he was going to Dodson and then to Olla. They left the cafe and drove to Dodson, where Barnes went with Miss Sookul to visit her friend, Mrs. Wendt, and to admire Mrs. Wendt's six day old baby. Miss Sookul turned down an invitation to remain longer, stating that she had some school work to do, whereupon, Barnes and Miss Sookul drove away in the direction of Winnfield. A few miles south of Dodson on the Winnfield road they were both killed in an automobile accident which occurred about 8:30 p.m. Details of the *Page 348 
accident are not in the record and the only issue presented is whether George Barnes, Jr., at the time of the accident was "performing services" or "in the course of employment" within the meaning of Sections 1 and 2 of the Workmen's Compensation Law, Act No. 20 of 1914, as amended by Act No. 85 of 1926, § 1.
We find that Barnes was employed by the month and was subject to the call of his employer's business at all hours; that the purpose of the trip from Haynesville to Olla, via Ruston and Winnfield, was to further his employer's business and that he remained engaged in that business until late afternoon when he decided to leave Olla and return to Winnfield for food and a possible visit with Miss Sookul. We believe that he had the right, under the terms and conditions of his employment, to suspend his search at Olla and to make the trip to Winnfield and further to use the company car for his personal purposes in visiting with Miss Sookul and in taking her to Dodson to see her friend. We also find that it was his intention to return to Olla and attempt to conclude the company's business with Mr. Crow before returning to Haynesville. We agree with the finding of the district court that Barnes did not intend to return to Olla until Miss Sookul should decide that the date should be terminated and after he should return her to her home, which was in the town of Winnfield, a half block off the direct route from Dodson to Olla.
[1] The law applicable is set forth by the Supreme Court of Louisiana in the case of Kern v. Southport Mill, Ltd.,174 La. 432, 141 So. 19, 21, from which we quote: "In determining, therefore, whether an accident 'arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?" Our colleagues of the First Circuit Court of Appeal followed the above rule in Evans v. Central Surety 
Insurance Corp., La. App., 10 So.2d 406.
[2] Even if it were conceded that the deceased made the trip to Winnfield for the purpose of securing food and that the getting of his supper was a part of his employment, it cannot be fairly held that the trip from Winnfield to Dodson for the sole purpose of visiting Miss Sookul's friend was for other than the pleasure of the deceased. The invitation to Miss Sookul and the evening with her was an independent and personal mission of the deceased and amounted to a digression from his employment. Exactly when and how the two young people intended to terminate the date upon arrival at Winnfield and how promptly Barnes would have re-entered his business and employment by beginning his return to Olla is a matter which will never be known, nevertheless, we agree with the finding of fact by the district court that Barnes intended to put into action his. intention to return to Olla only after his date with Miss Sookul had terminated and that the end of that date would not occur "until she so decided." We, therefore, conclude that the district court correctly held that George Barnes, Jr. was still engaged, at the time of the unfortunate accident, in the pursuit of his own inclination and pleasure, and that he was not called to the place of the accident by the necessities of his employment.
Counsel for plaintiff has argued that, under the doctrine expressed by this Court in the case of Matheny v. United States Fidelity Guaranty Co. et al., La. App., 181 So. 647, when the couple had completed the personal visit at Dodson with Mrs. Wendt and Barnes turned his car in the direction of Olla, by way of Winnfield, he re-entered his employment, and, had this been a suit in tort, his employer would be legally liable for his acts. The facts of the two cases are different. In the Matheny case this Court found that the employee had, prior to the happening of the accident, completed his personal mission or digression and had begun the return trip with no purpose other than to return the automobile back to Mansfield in time to resume his employer's work the coming morning.
It happens that Counsel for plaintiff is the author of an excellent, interesting and *Page 349 
well-illustrated article in 14 Tulane Law Review, dealing with cases of this nature. The rule there stated as to re-entry and an interesting discussion on the Louisiana rule is found in the case of Warnick et al. v. Louisiana Highway Commission, La. App., 4 So.2d 607, 611, from which we quote:
"* * * The trial judge, basing his opinion principally on the case of Cusimano v. A. S. Spiess Sales Company, 153 La. 551, 552, 96 So. 118, cites with approval the well written article of Honorable Hollingsworth B. Barrett of the Shreveport Bar reported in 14 Tulane Law Review, pages 72 to 81, wherein the question of the course and scope of employment in a case of this character is ably discussed, and, in our opinion, correctly set forth. In that article, the writer concludes: 'That in order to show the re-entry of the employment by the driver at the commencement of the journey that the following three elements must be present: The trip must have had its origin in the employer's business; the mental purpose of the employee following his departure from employment must be to return to his next duty, whether that be further work or the return of the vehicle to the place where it belongs; third, the purpose to return must have been put into effect by starting the return journey.'
"Applying these three elements, as set forth by Mr. Barrett, to the case at bar, we find that Mr. Carpenter was employed by the defendant as dragline operator and had had the truck in question under his absolute supervision and care. His staying over in Bogalusa on the Saturday was within the course and scope of his employment. His using the truck on the Sunday, at 2 or 3 o'clock in the afternoon, was also in the course and scope of his employment. When he returned to the field of operation to obtain the tools and return the truck to his boarding place he was likewise within the course and scope of his employment. We admit that when he went on a joy ride with some of his friends in another vehicle was not in the course and scope of his employment. Also, we admit that when he picked up his two girl friends in the truck for the purpose of joy riding, he was not then in the course and scope of his employment. But we are of the opinion that when he returned these two girls to their homes, after the ride had terminated and from the moment that he left them on his journey to deliver the truck where it belonged, he was then within the course and scope of his employment. The three conditions as set out by Mr. Barrett are fully met in this case."
[3] The case at bar is distinguishable from the Matheny and Warnick cases, above quoted, in the fact that the accident occurred before Barnes had completed his personal mission and before he had returned his guest to her home, and falls under the findings and holdings in the cases of Parks v. Hall et al., La. App., 179 So. 868; Id., 189 La. 849, 181 So. 191; Id., La. App., 182 So. 347 and Haeuser v. Ætna Casualty Surety Co. et al., La. App., 185 So. 493. In each of these cases the Court denied recovery against an employer whose employee had departed from his employment, engaged in a social mission of his own, and was on his way to return a personal guest home at the time the accident occurred, holding that re-entry had not taken place even though the employee intended to return to his duties promptly upon discharge of his guest.
The judgment is affirmed, with costs.