46 So.2d 66 (1950)
217 La. 142
WARREN
v.
GLOBE INDEMNITY CO. et al.
No. 38559.
Supreme Court of Louisiana.
February 13, 1950.
Rehearing Denied April 24, 1950.
*67 Hollingsworth B. Barret, Shreveport, for plaintiff-relatrix.
Irion & Switzer, Harry A. Johnson, Jr., C. C. Burton, Jr., Shreveport, for respondents.
McCALEB, Justice.
The dependent mother of George Barnes, Jr., who met his death in an automobile accident while allegedly performing duties of his employment, brought this suit for workmen's compensation against his former employer, Wilson Supply Company, and its compensation insurance carrier. The respondents resisted the claim on the ground that the fatal accident had no connection with Barnes' employment. The district court rejected the demand and, on appeal, the Court of Appeals, Second Circuit affirmed the judgment. See 30 So.2d 346. Certiorari was granted and, during the pendency of the case here, the plaintiff died. Her succession was opened in Florida and Mrs. Eleanor Reese, who had been appointed and qualified as administratrix, obtained an order substituting her as party plaintiff.
Thereafter, on motion of respondents we rescinded the order permitting Mrs. Reese to be substituted as a party plaintiff on the ground that she was without authority to prosecute the action, as administratrix of Mrs. Warren's estate, under the Florida appointment. However, leave was granted counsel for plaintiff to cause the substitution of a proper party. See Warren v. Globe Indemnity Co., 216 La. 107, 43 So. 2d 234. Subsequently, Rex Morrisett, local administrator of the ancillary estate of Mrs. Warren, was substituted as party plaintiff herein and the case has been submitted for decision under the provisions of Section 8 of Rule IX of this court.
The issue presented is whether the employee, at the time of the accident, was performing services arising out of and in the course of his employment as provided by the Employer's Liability Act. Paragraph 2 of Section 1 and Section 2 of Act No. 20 of 1914, as amended, Act No. 85 of 1926. No substantial dispute exists on the facts of the case, as found by the District Court and the Court of Appeal. We restate them as follows:
Wilson Supply Company is a dealer in oil field equipment and maintains a branch office in Magnolia, Arkansas. George Barnes, Jr. was employed as manager of the office and also as a travelling salesman at a salary of $200 per month, plus expenses. He lived at Haynesville, Louisiana, some 20 miles south of Magnolia and was furnished a company car for his use in performing the duties of his employment. On the morning of the fatal accident, Barnes left his home in Haynesville in the company car and drove to Olla, Louisiana, his purpose being to contact a Mr. Crow, a representative of Penrod Drilling Company, to secure Crow's signature to purchase orders for oil well equipment and supplies. En route, he stopped at Ruston, where he met a young lady, Miss Aldonza Sookul, a student at Louisiana Polytechnic Institute. She was about to leave for a trip to her home at Winnfield and Barnes invited her to ride with him, as he would pass through Winnfield on his way to Olla. After delivering her at her home in Winnfield, Barnes proceeded on to Olla (about 30 miles away) arriving about 10:00 a. m. at the home of a friend, a Mr. Miller, who was also a friend of Crow, and ascertained that Crow was out in the oilfields but was expected to call or come in sometime during the day. With Miller's assistance, Barnes spent most of the day visiting different places in an unsuccessful search for *68 Crow. At about 5:30 in the afternoon, Barnes informed Miller that "he had to go then"; that he was going to Winnfield to get something to eat. Miller invited him to stay over and have dinner at his home but Barnes declined, asking him "to check on Mr. Crow while he was gone" and that, if he came in, to tell him that he wanted to see him.
Barnes then left Olla, drove to the home of Miss Sookul at Winnfield, and invited her to dinner. She had already dined but told him that she would, nevertheless, accompany him. When they left, she informed her mother that she would not be out late as she had to study that night. They then drove to a cafe about a mile north of Winnfield on the road to Dodson, where Barnes ate a sandwich. Afterwards, they drove north to Dodson, where they called upon a friend of Miss Sookul. The visit there was short (about 15 minutes) and, when they left, they drove towards Winnfield. At a point a few miles south of Dodson, Barnes and Miss Sookul were killed when his automobile collided with another object. The accident occurred about 8:30 p. m. but no other details are disclosed by the evidence.
On the foregoing state of facts, both the district judge and the Court of Appeal found that the mission on which Barnes was engaged at the time of the accident was purely personal to him and entirely disconnected from the purpose of the trip for his employer. Conformably, it was resolved that the accident causing his death did not arise out of his employment.
We think that the rulings are correct. In deciding whether an accident arises out of and in the course of an employment, it is of initial importance that examination be made of the employment contract so that the hours of employment and nature of the work contemplated may be ascertained. In the case at bar, the Court of Appeal found that Barnes' engagement as travelling salesman rendered him subject to call at all hours and that he vested with a wide discretion in the determination of his hours of work. This type of employment has been indiscriminately referred to by some authorities as being "continuous" so that an employee injured at any time of the day or night is said to have been injured in the course of his employment or during working hours. See Horovitz on "Workmen's Compensation" pages 165-167 and cases there cited and Souza's Case, 316 Mass. 332, 55 N.E.2d 611.
The validity of these holdings or assumptions is not free from doubt. Merely because a man is subject to call at all times does not necessarily mean that he is in continuous employmentfor, obviously, his employer expects that, when the particular mission in which he is engaged is completed, he will take out time for food, rest and purposes of his own. It is probably more accurate to say, in cases of travelling salemen, that they serve their employer at such times and hours convenient to the customer and that they are, of course, vested with wide latitude and discretion in selecting the hours of work. But during the period the salesman is not working, there is no reason to place him in a preferred class by assuming that his employment is continuous. Thus, Barnes' mission was to have Mr. Crow sign some orders for supplies. He went to Olla for that purpose and remained on the job loking for Crow until about 5:30 in the afternoon. At that time, he decided to discontinue his search, visit the young lady in Winnfield and get something to eat. We have no doubt that he had the right to do this as his employment contract contemplated that he should have food, recreation and rest and the hours thereof were left in large measure to his discretion. Hence, in this aspect, it would not be unreasonable to say that the accident did not happen in the course of the employment, or during the working hours of his selection.
However, we do not find it necessary to rest our decision on that ground as it is perfectly plain that, in any view of the case, the accident cannot be said to have arisen out of the employment. The Court of Appeal based its opinion on the rule announced in Kern v. Southport Mill Ltd., 174 La. 432, 141 So. 19, 21, wherein it was declared that an accident arises out of *69 an employment when it occurs while the employee is engaged in his employer's business and "not merely pursuing his own business or pleasure" and at a time when the employer's business reasonably required that he be at the place where the accident happened. This doctrine, which has been reaffirmed and applied by the Court in Harvey v. Caddo De Soto Cotton Oil Co., 199 La. 720, 6 So.2d 747, 749; Nesmith v. Reich Bros., 203 La. 928, 14 So.2d 767 and Laine v. Junca, 207 La. 280, 21 So.2d 150, resulted from a liberal interpretation of the words "arising out of" the employment as used in the compensation actfor, under the prior decisions of our courts, beginning with Myers v. Louisiana Railway & Navigation Co., 140 La. 937, 74 So. 256, 258, it had been declared that, in order for an accident to arise out of the employment, "it must appear to have its origin in a risk connected with the employment". Indeed, at the time of decision in the Kern case, the overwhelming majority view throughout this country was that, if the force causing the injury was one to which the general public was subjected, the accident could not be said to arise out of the employment.[1] But the court in the Kern case, in adopting a more liberal rule under which injured employees are permitted recovery for any accident occurring while they are at work or doing things so closely connected therewith that it is fair to say that it has causal relation to the employment (i. e., using toilet, drinking water, etc.), was careful to point out that, as a condition to recovery, the employee must be engaged about his employer's business at the time of the accident and not merely pursuing his own purposes. If the court had not placed this limitation on the construction of the words "arising out of", then any accident occurring during working hours would be compensable, notwithstanding the fact that the employee was not engaged in the performance of his duties.[2]
To hold in the case at bar that the accident is compensable would destroy the rationale of the ruling in the Kern case and render the provision of the compensation law, that the accident arise out of the employment, utterly meaningless. This we cannot do; it is the function of the courts to construe laws, not to re-write them.
Counsel for plaintiff contends that, even if it is held that Barnes' trip to Winnfield for the purpose of visiting Miss Sookul was a personal mission, it was a temporary deviation or departure and that he had reentered his employment after he headed towards Winnfield following the visit to Miss Sookul's friend at Dodson.
We see no merit in this proposition because, if it be assumed that the tort doctrine of deviation and reentry[3] is applicable in compensation cases, it is manifest that there was no deviation by Barnes in this case as he was vested with implied authority and discretion to make the trip to Winnfield and Dodson for his own purposes. In other words, when he elected to discontinue his search for Mr. Crow at 5:30 in the afternoon and take the trip, he was not violating any instructions, express or implied, of his employer. Hence, he did not deviatehe simply used the car for a personal mission. And, if he did not deviate, he cannot be said to have reentered his employment until the mission was completed.
The judgment of the Court of Appeal is affirmed.
FOURNET, C. J., and MOISE, J., dissent and assign written reasons.
PONDER, J., dissents.
*70 FOURNET, Chief Justice (dissenting).
It is my opinion that at the time the deceased met his death by accidental means he was acting within the scope of his employment as a salesman for his employer.
It is not only incidental to an employment but also within the contemplation of an employer that a salesman, while traveling on the road in the furtherance of his employer's business, will stop for meals, as Barnes did in this case when, at the close of the business day, he sought a place in which to eat his evening meal. The fact that he went to Winnfield to eat instead of remaining in the small town of Olla, where good eating places are notorious by their absence, is no criterion, for most salesmen know by experience the best places where good, clean, and wholesome meals may be obtained. It is, therefore, just as reasonable to assume that Barnes chose to eat in Winnfield instead of Olla for this reason as it is to assume that he only chose to eat there because he wanted to be with the young lady. And the fact that he did take the young lady with him is immaterial, for it is only human nature that no one prefers to eat by himself. The criterion in cases of this kind should be whether the actions of the employee are within the reasonable contemplation of his employment.
The effect of the majority opinion is that when a man is eating his lunch he is satisfying his own appetite and is not acting within the scope of his employment. Consequently, if he is injured during this period he is not entitled to compensation, and particularly so if he chooses to not only eat off the premises of his employer but also at a restaurant other than the one in the immediate vicinity of the place of his employment, regardless of the sanitary and wholesome condition of the food at the place in the immediate vicinity or the cost of such meals.
My opinion is that such a result was never intended by the legislature in adopting the compensation laws of this state and I cannot, therefore, subscribe to an opinion that takes such a long step in this direction. Carried to its ultimate conclusion, this means that if because of the location of the employment or the personal preference of the employee the employee brings his lunch to work and eats it on the premises and, while so doing, is injured by a piece of falling machinery or the like, he is without a remedy to recover. Certainly he cannot sue his employer under tort, because of his agreement to be covered by the compensation law, and, under the holding in this case, he is not covered under the compensation laws while he is eating his lunch.
MOISE, Justice (dissenting).
In this dissent I am not attacking persons but opinions, not motives but reasons, not judges but decisions.
The polar star of interpretation which must be applied to the Workmen's Compensation Law is twofold:
First, in order to show the Legislative intent the language of the statute must be followed.
Second, on questions of the law the Court must adopt a liberal interpretation in favour of the employee and against the employer.
The majority opinion did not apply these rules.
The facts are substantially stated in the majority opinion, but we must remember a law of human nature as to the operation of the mindone may travel a route with two co-existing purposes. The record shows that the deceased had gone to Olla to fill an appointment with Mr. Crow, a customer of his employer, Wilson Supply Company. Mr. Crow was unable to keep the appointment, and the deceased thereupon left Olla to get some dinner in a neighbouring town (there being no suitable places to eat in Olla itself), with the intent to return to Olla after he had eaten and continue his attempts to contact Mr. Crow, the customer of his employer. The fact that for part of his initial journey to Olla in the morning he had a passenger in his car and for part of his return journey to Olla in the evening he had the same passenger in his car does not alter the purpose or motivation for the two trips to Olla; namely, the necessity for his contacting a *71 customer of his employer. When he met his death, the deceased was attempting to complete the unfinished business of his employment.
Mr. Justice Cardozo has prescribed the test for the dual purpose doctrine in the case of Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183. That was a suit in which a trip of an employee was made for combined business and personal reasons, and it concerned the interpretation of the phrase "in the course of the employer's business." There Justice Cardozo wrote:
"To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled."
We must keep in mind the determinative questionwould George Barnes have returned to Olla to see Mr. Crow, regardless of any decision which his passenger and companion might have made to stop off at any point along his return route. An affirmative answer here should be the "pay off." The decedent did meet his death on the return trip to Olla and performing services incidental to his employment; but the Court inadvertently restricts the liberality of the language of the Act, by holding that this decedent had to be injured by accident arising out of and in the course of his employment.
A mere reading of the Legislative Act, No. 20 of 1914, as amended, would show that in order for an employee in a hazardous occupation to recover for injuries, or his dependents for his death, under the Workmen's Compensation Act of Louisiana, it is not necessary to show that he was injured by accident arising out of and in the course of his employment, but only to establish the fact that he was injured performing services arising out of and incidental to his employment, in the course of his employer's trade, business or occupation.
Barnes was an employee in a hazardous occupationone which involved the operation of a motor-driven vehicle. He was on a mission for his employer. The transcript shows that he was engaged in an occupation as a traveling salesman, that he could work at any time of the day or night, and as a result of his employment he met his death.
To apply the law to the facts of this case we must go to the Legislative Act. The title of the original Act declares it to be an act prescribing liability of an employer to make compensation for injuries received by an employee in performing services arising out of and incidental to his employment in the course of his employer's business, trade or occupation.
Paragraph 2 of Section 1 of the Act, Acts 1914, No. 20, Section 1, Dart's Louisiana General Statutes, Section 4391, reads:
"Every person performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in the following hazardous trades businesses and occupations: * * *."
Section 2 of the Act, Acts 1914, No. 20, Section 2; 1918, No. 38, Section 1, 1926, No. 85, Section 1, Dart's Louisiana General Statutes, Section 4392, reads:
"If an employee employed as hereinabove set forth in section 1 (S. 4391) (except an employee who shall be eliminated from the benefit of this act for the reasons hereinafter set forth in section 28 (S. 4417) of this Act and elsewhere) receives personal injury by accident arising out of and in the course of such employment his employer shall pay compensation in the amounts and on the conditions and to the person or persons hereinafter provided."
Paragraph 2 of Section 1, as well as the title of the Act, make the sole qualification the receiving of injuries (in) performing services "arising out of and incidental to his employment." The phrase modifies the word Services. In Section 2 the phrase "arising out of and in the course of such employment" modifies the word Accident.
The Act itself takes notice of the cause-effect relationship between "accident" and "injury" in the following language:
"The word `Accident,' as used in this act shall unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen *72 event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury. * * * The terms `injury' and `Personal Injuries' shall include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom. The said terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted." Acts 1914, No. 20, Sec. 38; 1918, No. 38, Sec. 1; Dart's Louisiana General Statutes, Section 4427.
As the language of the Act is thus construed, the nature of the injury, the cause of the accident, and the agency producing it are immaterial. For, it is the time of the injury, the place where it was received, the mission of the employee, which bring about a determination that the services of that particular time were "out of and incidental to his employment." These constitute the test for recovery, which the majority opinion has ignored.
It seems that the Court of Appeal relies on the Kern case to disallow this recovery. That is a judicial non sequitur, because what the Kern case held was that if the duty of the employee in the course of his employer's business brought him into contact with peril, and he was injured, he was protected by the Compensation Act, even though the perils were common to all mankind. That was a logical conclusion, for in the Workmen's Compensation Act itself, the assumption of risk has been abolished as a defence. The instant case therefore falls squarely within the rule of recovery in the Kern case, because the employee was a salesman, furnished with a car, for travel, which subjected him to all the perils of the road, and he met his death while he was on the return journey to complete the unfinished business of his employer. He thus was within both tests of the Kern case. The uncontroverted facts of the case show that at the moment of the accident he was on the return journey towards Olla with the intention there of seeing the customer. This is precisely the same purpose with which he travelled that same road earlier in the day. If he was not performing services incidental to his employer's business in the course of his employment when he met with the fatal injury, then he was not performing services incidental to his employer's business and in the course of his employment that morning when he travelled the same route. On both occasions he had Miss Sookul with him; but on both occasions his main purpose and intention was to go to Olla to get the signature of the customer of his employer.
Therefore, we hold it self-evident that if by one mode of interpretation the right of recovery under the Workmen's Compensation Act may become shadowy and unsubstantial, and by another mode of interpretation that just end can be attained and the manifest purpose of the Act secured, the philosophy of law is that both upon principle and almost irresistible reasoning the latter interpretation ought to prevail. No court of justice can be authorized so as to construe any clause of this Act, if this view is correct, except by using the language of the Act, relating to hazardous occupations. To do otherwise would be to defeat the obvious purpose of the law when we should give a construction accordant with the words and sense of the Legislature which would fully enforce the provisions of the law and protect the workmen in the remedy which the law has granted them. A recovery should be had.
I respectfully dissent.
NOTES
[1] See Harvey v. Caddo De Soto Cotton Oil Co., supra, for a full discussion.
[2] Even so, the Court of Appeal for the Parish of Orleans in St. Alexandre v. Texas Co., 28 So.2d 385, 389, viewed the principle of the Kern, Harvey and Nesmith cases as writing out the words "arising out of" the employmentfor it observed that "whenever an accident occurs in the course of employment, no matter what may have been the cause of it, it must be held to have arisen out of the employment."
[3] See Cusimano v. A. S. Spiess Sales Co., 153 La. 551, 96 So. 118; Glass v. Wise & McAlpin, 155 La. 477, 99 So. 409; and compare James v. J. S. Williams & Son, 177 La. 1033, 150 So. 9.