O’NIELL, Chief Justice.
 

 This is a suit for compensation for total permanent disability, under the Employers’ Liability Act. Act No. 20 of 1914. The judge of the district court gave judgment for the plaintiff for the amount sued for, $20 per week during the period of the disability, not exceeding 400 weeks. The court of appeal affirmed the judgment.
 

 The defendant does not deny that the plaintiff is totally and permanently disabled. The defendant pleads that the plaintiff was not an employee of the defendant, in the meaning of the Employers’ Liability Act, but was an independent contractor ; and, in the alternative, the defendant pleads that, if the court should hold that the plaintiff was an'employee, he was not performing services arising out of or incidental to his employment at the time of the accident which caused his disability.
 

 The facts of the case are, not disputed. The defendant, a commercial partnership called Reich Brothers, had a contract with, an agency of the United States to haul and deliver limestone from a pit, located, about seven miles north of the village of Pollock, to Camp Livingston, located about, twelve miles South of. Pollock. The lime
 
 *931
 
 stone was being used in the construction of roads. about the camp. The hauling was done over the paved highway known as U.S. Highway 165, connecting the city of Monroe, north of Pollock, with the city of Alexandria, south of Camp Livingston.
 

 The defendant did not own or operate any trucks but arranged with a number of truck owners, including the plaintiff, to do the hauling. According to the terms of the contract the plaintiff furnished his own truck and bought his gas and oil from the defendant and allowed the cost to be deducted from his earnings. He was paid 70 cents per cubic yard for the limestone which he hauled from the pit to Camp Livingston. He was obliged by the contract to keep the truck going constantly, 24 hours a day, except perhaps on Sundays, and was allowed to hire a driver or drivers to relieve him. The contract was made on the 2nd day of January and the hauling commenced the next day. The defendant first employed two drivers, named Vandernack and Hebert, and the three worked on eight-hour shifts until the 5th day of January. On that day Hebert quit, and went to driving for a truck owner named Davis, in the same employment. Thereafter the plaintiff and Vandernack drove the plaintiffs truck on twelve-hour shifts. The plaintiffs shift commenced at midnight and Vandernack’s at noon. Hebert and a driver named Fletcher drove the Davis truck on twelve-hour shifts. Fletcher’s shift commenced at midnight and Hebert’s at noon. The plaintiff paid Vandernack 50 cents an hour for his services. According to the system, when the empty trucks arrived at the pit the employees of the defendant took charge of them and directed the loading. The trucks were loaded by means of a dragline, which was operated by four or five employees of the defendant, and which lifted the limestone directly from the pit to the trucks. Each truck load was inspected and leveled and measured by an employee of the defendant ; and duplicate tickets, showing the quantity of limestone in the truck, were given to the truck driver; and then he was allowed to go. on his journey to Camp Livingston. On his arrival at the camp he' delivered the limestone and the two tickets to a 'so-called spotter, employed by the defendant. The spotter signed one of the tickets and returned it to the .driver, and retained the other ticket. The spotter then directed the unloading of the truck. At the end of each day the truck owners turned in their tickets to the defendant and received one ticket showing the quantity of limestone hauled that day. The plaintiff was not employed for any definite length of time nor for the hauling of a definite quantity of limestone. The defendant was at liberty to discharge him or to put an end to the contract at any time that might have suited the defendant.
 

 As a matter of convenience, and in order to keep the trucks traveling constantly, the plaintiff and Vandernack, and Fletcher and Hebert, rented and occupied a rooming house approximately midway between the limestone pit and Camp Livingston,— about three" miles below Pollock and therefore about nine miles above Camp Livingston. The lodging house was located about 100 feet from and on the west side of U.S. Highway 165. On the 6th of
 
 *933
 
 January, from noon to midnight, the plaintiff and Fletcher were resting at the lodging house while Vandernack drove the plaintiff’s truck and Hebert drove the Davis truck. Shortly before midnight the plaintiff and Fletcher arose and went out to the highway to relieve the two other drivers, — Vandernack on the plaintiff’s truck and Hebert on the Davis truck. The Davis truck, with Hebert driving northward from Camp Livingston, arrived in front of the lodging house at the same time when the plaintiff and Fletcher came out on the highway, about midnight; and Hebert parked the Davis truck on the east side of the highway, off of the pavement and on the dirt shoulder, out of danger of passing cars. The plaintiff and Fletcher walked across the highway to the Davis truck, on which Fletcher was to relieve Hebert; and the plaintiff asked Hebert, who was yet in the cab of the parked truck, about the whereabouts of the plaintiff’s truck, and was informed that the truck probably had left the pit and would arrive soon, loaded and on its way to Camp Livingston. The plaintiff therefore had to await the arrival of his truck, to relieve Vandernack and drive the truck on to Camp Livingston. While the plaintiff and Fletcher were standing by the Davis truck, talking to Hebert in the cab, an automobile came southward down the highway at a high rate of speed, ’ swerved to the left or east side of the highway, struck and injured both the plaintiff and Fletcher, and proceeded on its way. Fletcher was injured only slightly, but the plaintiff suffered the injuries which caused his total and permanent disability. The name or identity of the automobile driver who inflicted the injuries was never discovered. The time at which the automobile struck and injured the plaintiff and Fletcher was a few minutes — perhaps five or ten minutes —after midnight — -while the plaintiff was awaiting the arrival of his truck.
 

 The term “independent contractor” is defined in subsection 8 of Section 3 of Act No. 85 of 1926, amending the original Employers’ Liability Act, Act No. 20 of 1914, thus: “any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished.”
 

 The plaintiff in this case rendered service other than manual labor, by furnishing his truck and the cost of operating it. If he had rendered no other service than the furnishing of his truck and the expense of operating it, he would have been classed as an independent contractor, but in addition to that service he furnished his manual labor, and to that extent was an employee, and not an independent contractor. The definition in the statute -does not give a formula for determining whether a person who renders a service consist-’ ing partly of manual labor and partly of the furnishing of the implements or equipment for the rendering of the service is an employee or an independent contractor. Perhaps the distinction should be made according to the extent of the manual labor furnished, in comparison with any other service rendered, such as the furnishing of
 
 *935
 
 the necessary implements or equipment for the rendering of the service. An employee does not lose his classification as such, and be classed as an' independent contractor, merely because he furnishes his own tools or implements or equipment with which he renders the service, even though the recompense is for a specified result, and is not paid as daily or weekly wages, but is computed upon a specified unit of measure of the result accomplished. In such cases, if the furnishing of the implements or equipment with which the work is,done forms a considerable proportion of the service for which the
 
 recompense
 
 is paid to the employee, the rental value of the implements or equipment should be deducted from the total amount of recompense paid to the employee in order to compute the weekly wages on which to base the compensation for his disability, — if there is any doubt that the net amount of his wages is enough to allow him the maximum compensation of $20 per week during the period of disability. On that subject the decision in Alexander v. Latimer, by the Court of Appeal for the Second Circuit, 5 La.App. 41, where the essential facts were exactly as they are in the present case, is directly in point. Alexander, who was allowed compensation for partial disability, was employed by the defendant to haul and deliver gravel, for a stipulated amount per cubic yard, and furnished his own truck and the expense of operating it. The court refused to allow him compensation on the basis of his weekly earnings with the use of his truck, but allowed him compensation at the statutory rate of 65 per cent calculated on the weekly wages paid to truck drivers who were engaged in the same employment but who did not furnish their own trucks. In the present case there is no doubt or dispute that the plaintiff’s weekly earnings, excluding any allowance for the use of his truck, were more than enough to allow him the maximum compensation of $20 per week.
 

 If we had no precedent for deciding whether the plaintiff in this case should be classified as an employee or as an independent contractor, under the definition in the Employers’ Liability Act, the question would be a close one. But it would be impossible to distinguish the decision rendered in this case from the decision rendered in Alexander v. Latimer, or from the decision rendered in Litton v. Natchitoches Oil Mill, La.App., 195 So. 638. The attorneys for the defendant in this case, in their brief, concede that it is not possible to distinguish this case from the Litton case, but they declare that they “believe the court erred in its decision in the Litton case and that the case should not be followed at this time.” This court already has approved the decision in the Litton case by denying the defendant a writ of review, on the ground, stated in the order refusing the writ, that on the facts found by the court of appeal the judgment was correct. The facts found by the court of appeal and stated in the official report of that case are, essentially, exactly like the facts of this case, except that the owner of the truck in the Litton case hauled cotton seed, and the plaintiff in this case hauled limestone. In Alexander’s case he hauled gravel. The ruling in the Litton case and in Alexander’s case is in line with the de
 
 *937
 
 cisión by the Court of Appeal for the First Circuit in James v. Hillyer-Deutsch-Edwards, 15 La.App. 71, 130 So. 257, and with the following decisions by this court: Bell v. Albert Hanson Lumber Co., 151 La. 824, 92 So. 350; Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99; Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87.
 

 In Alexander v. Latimer, also, this court •denied a writ of review. The doctrine of the decision is stated in the syllabus thus:
 

 “One who is employed to deliver gravel, is directed to haul over certain routes and deliver gravel at certain points, is an employee and not an independent contractor even though the compensation received by him included payment for the use of the truck.”
 

 In the course of the opinion in that case it was declared:
 

 “The rule is to construe the statute so as to include all services which can be reasonably said to come within its provisions (Dick v. Gravel Lumber Co., 152 La. [993], 994, 95 So. 99), and considering that defendant did have the right to control the plaintiff, at least as to the route over which he should haul and the place where he should deliver the gravel, we are of the opinion that plaintiff cannot be said to have been an independent contractor, although it appears that the compensation being received by him included payment for the use of the truck (Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87).”
 

 In the case of Powell v. Spencer Brothers, decided by the Court of Appeal for the Second Circuit, 5 La.App. 218, the doctrine was repeated in the syllabus thus:
 

 “One who is employed to haul gravel with a motor truck and is instructed as to the places of loading and unloading, and his employer could discharge him, is an employee and not an independent contractor under the Workmen’s Compensation Act, No. 20 of 1914, and amendments.”
 

 And in the course of the opinion in that case, in answer to the defendant’s argument that the plaintiff was an independent contractor, the court declared:
 

 “We are of the opinion, however, that the plaintiff, having been employed to haul the gravel with a motor truck, and the defendants having instructed him as to the places of loading and unloading, shows that defendants did have control of the means and manner by which the work was to be accomplished, and that they did have control of the plaintiff during the time he was working and the right to discharge him; hence that plaintiff was an employee rather than an independent contractor and the mere fact that he furnished and maintained the truck does not alter the situation. (Dick v. Gravel Logging Co., 152 La. [993], 994, 95 So. 99; Burt v. Davis-Wood Lumber Co., 157 La. 111, 102 So. 87; D. A. Alexander v. Belton Latimer, 5 La.App. [41] ; 13 Advance Reports 41.)”
 

 Of course, if the contract by which the plaintiff in this case was employed by the defendant to haul limestone from the pit to Camp Livingston contained all of the features necessary to classify the plaintiff as an independent contractor under subsec-, tion 8 of Section 3 of the amendment of
 
 *939
 
 the statute, an interpretation given to the contract by the defendant, classifying the plaintiff as an employee, would be merely an error of law, and of no importance. But, considering that the service which the plaintiff rendered under the contract consisted partly of his doing manual labor, the interpretation which was put upon the contract by the defendant has some significance. The defendant gave to the plaintiff, as to each of the truck drivers similarly engaged, a ticket entitled “Time Ticket”, addressed “To All Highway Patrolmen”, requesting them: “Please let this man Chas. Nesmith pass as he is employed by us to haul pit run rock to Camp Livingston.” It is possible, of course, that the defendant’s use of the phrase “he is employed by us” was not intended to classify Nesmith as an employee, as distinguished from an independent contractor, but if the defendant had declared “To All Highway Patrolmen” that Nesmith was under contract to haul pit run rock to Camp Livingston, it certainly would have indicated that the defendant’s interpretation of the contract was that Nesmith was an independent contractor. Be that as it may, we shall rest our affirmance of the ruling that the plaintiff was an employee, and not an independent contractor, upon the decision rendered in Alexander v. Latimer and in Litton v. Natchitoches Oil Mill, the essential facts of which cases are exactly like the essential facts of this case.
 

 The decisions cited by counsel for the defendant to support their argument that the plaintiff was an independent contractor may be reconciled with the decision rendered in the present case. For example, in Ryland v. Harve M. Wheeler Lumber Co., 146 La. 787, 84 So. 55, where the plaintiff sued, primarily, for $15,000 damages for personal injuries under the law of torts, or, in the alternative, for compensation at the rate of $10 per week for a maximum of 400 weeks, under the Employers’ Liability Act, he based his suit upon the allegation, first, that he was an independent contractor, and, second, that if he was not to be classed as an independent contractor he was an employee, at the time when he suffered the personal injuries for which he claimed either damages or compensation. He was under contract to haul timber from the defendant’s swamp lands, at $3 per thousand feet, and employed a crew of men and furnished his own teams and other logging equipment. As far as the record shows it seems not to have been disputed that the plaintiff in that case was an independent contractor, and all that the court decided in that respect was that, being an independent contractor, the plaintiff was not barred by the Employers’ Liability Act from suing 'for damages under the law of torts. But the court decided also that as there was no proof of fault or negligence on the part of the defendant there was no liability for damages. Besides, the decision was nullified by the remanding of the case, on an application for rehearing, for the purpose of admitting documentary proof that the defendant had acquiesced in the judgment of the district court while the case was pending in the supreme court on appeal.
 

 In the next case cited by the defendant, Brown v. Weber-King Lumber Co., 3 La. App. 596, 597, the deceased employee, J. D.
 
 *941
 
 Brown, whose widow sued for compensation, was an employee of an independent contractor, J. W. Brown, and not an employee of the defendant, Weber-King Lum-. ber Company; hence it was held that the widow and her minor children had no right of action against the lumber company for compensation under the Employers’ Liability Act. There is no analogy between that case and this case. ’
 

 In the next case which the defendant cites, Cobb v. Long Bell Lumber Co., by the Court of Appeal for the First Circuit, 16 La.App. 297, 134 So. 310, the plaintiff conducted a blacksmith shop in the Town of DeRidder, and entered into an arrangement with the defendant to shoe the defendant’s mules at the defendant’s barn. The only difference between the plaintiff’s relation with the defendant and his relation with the customers who brought their horses and mules to his blacksmith shop was that he- performed his service for the defendant at the defendant’s barn and performed the service for his other patrons at his blacksmith shop. The court held that that difference did not make the plaintiff an employee of the defendant, in any other sense than that in which he was an employee of the customers who brought their horses and mules to the blacksmith shop. The issue in that case was not the same as in this case.
 

 In the next case which the defendant cites, Myers v. Newport Co., by the Court of Appeal for the First Circuit, 17 La.App. 227, 135 So. 767, the court found that the deceased, for whose death the widow claimed compensation under the Employers’ Liability Act, was, at the time when he was killed accidently, fulfilling a contract to sell and deliver wood to the defendant at $3.50 per ton; that he made his own arrangement for stumpage, employe^ his own crew of men, furnished his own tools and equipment, and merely delivered the wood to the defendant at the price stipulated. He was in every sense an independent contractor.
 

 In the next case 'which the defendant cites, Durant v. Industrial Lumber Co., by the Court of Appeal for the First Circuit, 6 So.2d 164, the plaintiff claimed compensation for an accidental injury by which he lost an eye while hauling pulpwood for the defendant. The court held that the plaintiff was not an employee of the defendant but was an independent contractor, on the finding of fact that the plaintiff was buying the timber from a third party, H. D. Dear, and cutting and hauling the timber or pulpwood and selling and delivering it to the defendant at $3.^5 per cord. The defendant had no dealings with the plaintiff except to receive the wood delivered at the defendant’s tramroad and pay for it at the price stipulated in the contract. There was no element of the relation of master and servant, or employer and employee, between the defendant and the plaintiff, under the Employers’ Liability Act, in that case.
 

 Our conclusion is that the plaintiff in this case was not an- independent contractor but an employee of the defendant, under the Employers’ Liability Act. And our opinion is that he was performing services arising out of and incidental to his employment at the time of the accident which caused his disability. He was at the
 
 *943
 
 place of his employment, because his place of employment extended along the whole length of U.S. Highway 165 for the distance of 19 miles, from the limestone pit to Camp Livingston. The plaintiff was standing at the edge of the highway, awaiting the arrival of his truck, and was there for no other purpose than to perform the work for which he was employed. During the few minutes of waiting for the arrival of the truck he was as plainly performing services arising out of and incidental to his employment as if the truck had arrived and he had mounted it and was proceeding on his way to Camp Livingston. It was not possible for him to arrange his schedule so that the truck would arrive in front of his lodging house at the very moment when he would come out of the house to take the place of his driver. In that sense his- duty to his employer required him to be at the place where he was at the time of the accident; and, as he was there for no other purpose than to serve his employer, he was, in the meaning of the statute, performing services arising out of and incidental to his employment at the time of the accident. Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532; Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402; Kern v. Southport Mill, 174 La. 432, 141 So. 19; Rogers v. Mengel Co., 189 La. 723, 180 So. 499; Harvey v. Caddo DeSoto Cotton Oil Co., 199 La. 720, 6 So.2d 747.
 

 The following excerpt is from the opinion in Cudahy Packing Co. v. Parramore, 263 U.S. at page 426, 44 S.Ct. at page 155, 68 L.Ed. at page 370, 30 A.L.R. 532:
 

 “We attach no importance to the fact-that the accident happened a few minutes-before the time Parramore was to begin work, and was therefore, to that extent, outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises as. much as it contemplated his working there, and must include a reasonable interval of time for that purpose. See Gane v. Norton Hill Colliery Co., [1909] 2 K.B. 539, 544 [78 L.J.K.B.N.S. 921, 100 L.T.N.S. 979, 25 Times L.R. 640, 2 B.W.C.C. 42] ; De Constantin v. Public Service Commission, [75 W.Va. 32, 83 S.E. 88, L.R.A. 1916A, 329] supra.”
 

 The following excerpt from Bountiful Brick Co. v. Giles [276 U.S. 154, 48 S.Ct. 222, 72 L.Ed. 507, 66 A.L.R. 1402] also, is directly in point:
 

 “And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be-used in passing to and from the place where the work is to be done. If the
 
 employee
 
 be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer’s, premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer’s premises, the-injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is. reached.”
 

 
 *945
 
 In Kern v. Southport Mill, 174 La. at page 438, 141 So. at page 21, it was declared :
 

 “And, when one finds himself at the scene of accident, not because he voluntarily appeared there but because the necessities of his business called him there, the injuries he may suffer by reason of such accident ‘arise out of’, the necessity which brought him there, and hence ‘arise out of’ his employment, if it so be that he was employed and his employment required him to be at the place of the accident at the time when the accident occurred.”
 

 Counsel for the defendants cite the following cases to support their argument that the plaintiff in -this case was not performing services arising out of or incidental to his employment at the time of the accident, namely: Bass v. Shreveport-Eldorado Pipe Line Co., by the Court of Appeal for the Second Circuit, 4 La.App. 107; Thibodeaux v. Yount Lee Oil Co., by the Court of Appeal for the First Circuit, 13 La.App. 591, 128 So. 709; Boutte v. R. L. Roland & Son, by the Court of Appeal for the Second Circuit, 15 La.App. 530, 132 So. 398; Thomas v. Shipper’s Compress & Warehouse Co., by the Court of Appeal for the Parish of Orleans, 158 So. 859; Fowler v. Louisiana Highway Commission, by the Court of Appeal for the Second Circuit, 160 So. 813; Walker v. Lykes Bros.Ripley S. S. Co., by the Court of Appeal for the Parish of Orleans, 166 So. 624. In the Bass case the employee was injured after his day’s work was done and while he was on his way home “not anywhere near the place where he worked.” The statement of facts on which the Thibodeaux case was submitted shows' that the plaintiff’s day’s work was done and he was on his way home and only about 25 steps from his home when he was injured by stepping on a nail. In the Boutte case the accident occurred while the employee was being transported to the place of employment by the defendant’s foreman, but without the knowledge or consent of the defendant, and in a vehicle owned not by the defendant but by the foreman. The Thomas case was an action for damages for tort, brought by a workman injured by his employer’s truck or trailer, while he was walking across a bridge, on his way home from his work; and the ruling was that the plaintiff was not precluded from suing for damages by the Employers’ Liability Act because the injury did not arise out of or in the course of, or incidental to, his employment. The bridge on which the accident occurred is the one which connects South Claiborne Avenue with the Jefferson Highway and is located several blocks —perhaps 15 blocks — from the Shipper’s Compress and Warehouse plant, where the plaintiff was employed. In the Fowler case the employee was fatally injured on his way to work, and at a place about 35 miles from the place where he intended to work that day. In the Walker case the employee was injured more than half an hour after his day’s work was done and at a time when he was three or four blocks away from the premises of his employer.
 

 The judgment of the court of appeal affirming the judgment of the district court is affirmed ‘at the cost of the defendants, Reich Brothers and the members of the firm, in solido.
 

 HAMITER, J., recused.