The plaintiff in this suit was formerly employed by the Tangipahoa Parish School Board as a school bus driver. He had a certain designated route over which he had to transport the children to and from school at Amite. During the month of February, 1942, there was certain construction and repair work going on on the road and it was necessary for him to use a detour. On this detour route he was obliged to cross the railroad tracks of the Illinois Central Railway and on the morning of February 12, 1942, while he was negotiating that crossing, the school bus which he was driving was run into by a south bound passenger train and in the collision he sustained injuries which he claims have totally and permanently disabled him from carrying on his usual occupation as a school bus driver. He has accordingly instituted this suit to recover compensation from the defendant parish school board, by whom he alleged he was employed. *Page 57 
He sets out in his petition that he was paid for a period of from 8 to 10 months annually at a monthly wage of $90, which, reduced to weeks, made his average weekly wage $22.50, and that therefore he is entitled to recover at the rate of 65% of that average weekly wage, or the sum of $14.63 per week. In addition he avers that he is entitled to recover such medical expenses as he has incurred for treatment in accordance with the statements of local physicians and the Charity Hospital at New Orleans, in an amount not to exceed the sum of $250 as allowed under the compensation statute, Act No. 20 of 1914. He prays for judgment accordingly.
The defendant parish school board, in answer to the citation served upon it, first appeared and filed an exception of no cause of action and also an exception of vagueness, which exceptions, as appears from the extract of the minute entries found in the record, were referred to the merits.
The defendant then filed its answer in which it denied generally each and every article in the plaintiff's petition except that it admitted plaintiff's employment as one of its school bus drivers, and further answering, averred that such employment was not hazardous within contemplation of the Workmen's Compensation Law. Further the defendant pleaded that as a political sub-division of the State of Louisiana, it was not subject to the provisions of that statute. It then averred that the most reliable information it had concerning the accident alleged by the plaintiff came from plaintiff's own statements in which he had admitted that he was entirely at fault and that consequently it is not liable to him in any amount whatsoever.
In the alternative defendant then alleged that in the event it is liable for compensation to the plaintiff that it cannot be made to pay more than at the rate of $6.48 per week for the reason that although plaintiff was paid at the rate of $89 per month for a term of 9 months, under his contract it was necessary that he lease from it a steel school bus body on which he paid a monthly rental of $13.40 during the said 9 months and that in addition, it was necessary for him to own and operate a chassis on which the body was mounted, on which he paid the sum of $35 per month. It also alleged that under his contract, in operating the said school bus, plaintiff had to furnish his own gasoline, oil, lubrication, etc., all of which amounted to $15 per month. By deducting all of these various amounts from his monthly salary, it appears that plaintiff received only the sum of $25.60 per month or the sum of $6.40 weekly, on which the rate of compensation should be based.
In this alternative plea, defendant also alleged that the injuries sustained by the plaintiff were of a minor nature and that he is presently able to do work of any reasonable character which he was able to do before the accident and that therefore his compensation should be calculated only for the few weeks that he was incapacitated.
In its answer defendant then assumed the position of a plaintiff in reconvention and alleged that on February 5, 1942, plaintiff leased from it the steel school bus body referred to, at a monthly rental of $13.40 per month payable from September to May of each year following, and agreed that in the event he defaulted in the payment for any month, he would return the said steel school bus body free of any incumbrances whatsoever, all as appears in the written contract between them. It then averred that in the accident alleged in plaintiff's petition, the said school bus was completely wrecked and is therefore a total loss and that at the time it happened there was still due and owing by him the sum of $498.50, which amount it is entitled to recover from him, and for which it prays to be awarded judgment against him in reconvention.
In a supplemental answer the defendant averred that the plaintiff had executed a bond in its favor in the sum of $250 in order to guarantee the performance of his contract in the payment of the rental due on the said steel school bus body, or its return in the event of his default; that W.J. Williams had signed the said bond as surety and it therefore reserves all of its rights to proceed against the said surety on the said bond.
After trial on the merits there was judgment in favor of the plaintiff awarding him compensation at the rate of $7.80 per week based on an average weekly wage of $12 per week for a period not to exceed 400 weeks and in addition, the sum of $100 for medical expenses. The defendant then appealed and plaintiff has answered asking that the judgment be amended by increasing the amount of compensation from $7.80 per week to $14.46 per week, and as amended that the judgment be affirmed. *Page 58 
The point raised under the exception of no cause of action seems to have been based on the proposition first, that the school as a political sub-division of the State, was not amenable to the Workmen's Compensation Law, and second, that plaintiff's occupation was not of a hazardous nature. In brief of counsel for defendant it is stated that the defense that the school board is a political sub-division of the State, and therefore not subject to the provisions of the statute, has been abandoned. In view of the decision in the cases of Charity Hospital v. Board of School Directors of St. Martin Parish, La.App., 146 So. 487, Kroncke v. Caddo Parish School Board, La.App., 183 So. 86, and Washington v. Sewerage Water Board of New Orleans, La.App., 180 So. 199, there clearly was no merit in the contention made on this point. We note also that in stating the four propositions on which the case is to be decided, in their brief, counsel say nothing about the other point raised under the exception of no cause of action, and also pleaded in the answer, to the effect that plaintiff was not engaged in a hazardous occupation as the operator of a school bus. That point evidently has also been abandoned and well may it have been under the numerous recent decisions of the courts holding that anyone engaged as a driver of any motor vehicle, such as an automobile or a truck, is actually engaged in a hazardous occupation and comes within the purview of the Compensation Law.
Defendant still seems to rely on the proposition, which although not raised in the pleadings, relates to the status of the plaintiff which, it claims, was that of an independent contractor. It is urged on this point that as he furnished his own bus, that made him an independent contractor as distinguished from those cases in which persons have been held to be employees only, when it was shown that the truck or tools used by them were furnished by the employer. The ownership of the truck or tools by the employee is not the only test to be applied to a decision of this question. The way in which the work is to be performed and whether the employee is to use his own judgment in performing it or has to do it under the direction of his employer, are equally important tests in considering and determining his status. If the employer maintains supervision over him and directs the manner in which he is to perform his duties, the employee, although owning his own equipment, is none the less an employee only, and is not an independent contractor. He is therefore protected under the act. That point has been definitely settled and is again fully discussed and passed on in the very recent case of Nesmith v. Reich Bros., 203 La. 928, 14 So.2d 767. That decision justifies the holding in this case that plaintiff was not an independent contractor but an employee coming under the provisions of the act.
The next contention raised by the defendant is that the plaintiff was not totally and permanently disabled by reason of the injuries sustained by him in the accident.
In his petition plaintiff alleged that he sustained a fractured left pelvis, a fracture of three ribs, with the splintering of one about the region of his left chest and side and a fractured shoulder. The testimony of Dr. A.L. Lewis and that of Dr. J.H. McClendon reveals that plaintiff had a fracture of the bone that went into the socket of the pelvis, which they refer to as the ischium, and that he also had a fracture of the second, third, fourth, fifth, sixth, seventh, eighth and probably the ninth rib. He was left with a bad approximation and the bones in the second, third, fourth, fifth and sixth rib are overlapping about a quarter of an inch. The injury from the fracture of the ischium has left him with a shortened left leg, by one inch, and the injury to his ribs, probably by reason of some adhesions in the pleura, has left him with a restricted use of the left shoulder and arm. Whilst Dr. Lewis does state that plaintiff can drive an automobile, we do not think that he intended to convey the impression that he could do so to the extent that he could carry on his occupation as a school bus driver. He qualifies his statement by saying that plaintiff might experience some discomfort and some ache in doing so. He does not think that he would pass an examination for industrial work and is of the opinion that he is unable to continue his work as a farmer. Dr. McClendon on the other hand, is of the opinion that as far as farming is concerned plaintiff is disabled fifty per cent and that he should not be allowed to operate a school bus as he is totally disabled from doing that kind of work. He says that for the time it would take him to make his route in driving the school bus, his hip would begin to give him trouble and that for a man of his age, being fifty years old, he would suffer pain which would distract *Page 59 
his attention from his driving. If something happened because of such distraction, he has not enough strength in his left arm to prevent the bus from getting into an accident. He concludes by saying that plaintiff might be considered a one-armed man.
Under the testimony of these doctors, which is the only medical evidence found in the record, we cannot understand how it can be contended that plaintiff is not totally and permanently disabled within contemplation of the Workmen's Compensation Law and we are convinced that the district judge was correct in holding him so.
The next proposition to be considered is the contention of the defendant that there should be deductions of the amounts which plaintiff had to pay monthly on the bus body and chassis and for his operating expenses, from the amount of pay he received each month, in order to compute his weekly rate of compensation. In support of its claim for these deductions, counsel for defendant refers us to the case of Nesmith v. Reich Bros. et al., supra, which holds that if the furnishing of his implements or equipment with which the employee performs his work, forms a considerable proportion of the service for which he is recompensed, the rental value of the implements or equipment should be deducted from the total amount of the recompense he receives in order to compute the weekly wages on which to base the rate of compensation he is to be paid arising out of his disability. It seems to have been unnecessary, however, in that case, to determine what the rental value of the implements or equipment amounted to, as without making any deductions therefor, the net amount of the employee's wages was enough to allow him the maximum compensation of $20 per week during the period of disability. In the present case the net amount of the plaintiff's earnings was far from sufficient to entitle him to the maximum rate of compensation per week, so, assuming the law to be as stated, a deduction of the rental value of his school bus should be made from his earnings in order to determine his average weekly wage on which to base compensation. But there isn't any testimony whatever found in the record to show what the rental value of the bus was and, it follows, there is none to show what proportion such value bore to the service rendered by him and for which he was recompensed. It is impossible therefore to make any deduction from that source.
In the case of Alexander v. Latimer, 5 La.App. 41, the injured employee, besides being paid wages for hauling gravel with his own truck, was also paid compensation for the use of the truck. The court did not think it possible to accept as a criterion, the amount which he earned with the use of his truck, in fixing his rate of compensation but as there was testimony in the record showing what other truck drivers, not furnishing their own trucks, earned per day, it accepted that as the basis on which to fix the compensation due him. As there is no testimony in the record on this point, that criterion cannot be used in this case. The only testimony found which has any bearing on the plaintiff's operating expenses is with regard to his gasoline bills. Whilst defendant had alleged in its answer that his gasoline bills amounted to $15 per month, and that apparently is what the district judge found, the proof is uncontradicted that the proportionate amount of the gasoline used by him in operating his bus for the school board was not more than $6 per month. That therefore is the only amount we find which can be deducted from plaintiff's monthly pay of $89, leaving his net earnings at $83, on which his compensation is to be computed.
Although plaintiff did not work for the school board during the twelve months of the year he nevertheless was employed on a nine-month basis at a monthly salary of $89. The proper and accepted method to compute his compensation under the circumstances is to divide one month of his net earnings, found to be $83 into four weeks in order to arrive at his weekly average rate of pay, sixty-five per cent. of which would be the amount of compensation he is entitled to receive per week.
A simple calculation shows that this would be sixty-five per cent. of $20.75, or $13.48.
For the reasons stated it is therefore ordered that the judgment appealed from be amended by increasing the award for compensation from the sum of $7.80 per week to the sum of $13.48 per week, and that as thus amended, it be affirmed, all at the costs of the defendant, appellant herein. *Page 60