Plaintiff, a shipping clerk at the bulk plant of The Texas Company in New Orleans, sustained a serious injury to his right hand as he was endeavering to remove the cap from a bottle of a non-intoxicating beverage or "soft drink" known as R C Cola. Alleging that as a result of the injury he had been totally and permanently disabled and that, under the circumstances surrounding the accident, he was entitled to be paid compensation in accordance with the provisions of the Workmen's Compensation Act of Louisiana (Act No. 20 of 1914, as amended), he brought this suit and prayed for judgment in compensation at $20 per week for 400 weeks against his employer, The Texas Company, and its insurance carrier, Maryland Casualty Company. He also prayed for $500 for medical, surgical and hospital services and medicines. In the alternative, he alleged that, in the event it be found that under the facts of the case he was not entitled to compensation, he should have judgment ex delicto against The Texas Company and the Maryland Casualty Company, and also against American Beverage Company, a partnership, and the various members composing that partnership and against Liberty Mutual Insurance Company, the insurers of the partnership, in the sum of $20,865.05.
The Board of Administrators of the Charity Hospital of Louisiana at New Orleans intervened and alleged that the plaintiff had been treated at the Charity Hospital in New Orleans, and had been furnished "certain drugs, medicines and X-rays" at a cost of $166, and the intervenor prayed that in the event plaintiff should recover judgment, the said intervenor, in turn, have judgment to be paid out of such amount as plaintiff might recover together with attorney's fees and costs.
After various exceptions had been filed and amendments required by these exceptions had been made, the defendants answered. The American Beverage Company and the members composing that partnership, and Liberty Mutual Insurance Company denied all liability on their part, and The Texas Company and its insurers, Maryland Casualty Company, denied all liability either in tort or in workmen's compensation, asserting especially that the accident in which the plaintiff had been injured did not occur in the course of his employment, and did not arise out of it.
In the District Court there was judgment in compensation in favor of plaintiff and against The Texas Company and Maryland Casualty Company for $20 per week for 400 weeks, subject to credit for payments already made and for $500 for medical, surgical and hospital services and medicines. There was judgment in favor of American Beverage Company and the individuals composing that partnership, and in favor also of Liberty Mutual Insurance Company. There was also judgment in favor of the intervenor, Board of Administrators of the Charity Hospital of Louisiana at New Orleans for $166, and 10% attorneys fees and interest "said amount to be paid by plaintiff herein." From this judgment The Texas Company and Maryland Casualty Company have appealed and there has been no answer to the appeal of those corporations, and no independent appeal by any of the other parties.
There is no dispute over any of the facts except that The Texas Company and Maryland Casualty Company, hereinafter referred to as defendants, in addition to contending *Page 387 
that those facts show that the accident did not occur in the course of the employment and did not arise out of it, also contend that plaintiff is not permanently or totally disabled and they especially contend that if he is so disabled, his condition is not the result of the accident.
The facts surrounding the accident are as follows: The plaintiff, for many years prior to the accident, had been employed by The Texas Company as a shipping clerk in its bulk plant on Claiborne Avenue in New Orleans. Sometime before the accident, the employees had established the custom whenever one of them was sick, or whenever there was a death or an operation, of constributing small amounts to be used in sending flowers, gifts, etc. One of the employees conceived the idea that, instead of calling on the others on such occasions, a revolving fund might be created by the introduction into the plant of a candy machine from which candy could be purchased by the employees by placing the necessary coins in the slots of the vending machine. The profits accummulated were used for the purpose mentioned. The company had placed in its office a water cooler consisting of a box with coils through which the water passed and in this box, on top of the coils, ice was placed to cool the water. This water was furnished for the employees, and in addition to the water furnished by it, The Texas Company permitted its employees to leave the plant and go to a cold drink stand a short distance away for soft drinks. When these drinks became scarce, the employee who had originated the idea of the candy vending machine, arranged with the American Beverage Company to supply R C Colas and these drinks were bought with the profits of the candy machine. The bottles containing R C Cola were placed in a small box near the water cooler, which box was furnished by The Texas Company and the bottles were cooled with ice also furnished by that company. When an employee desired to partake of the contents of one of the bottles, he would place the necessary coin in a box nearby and help himself and the profits were used to renew the supply of soft drinks.
Late in the afternoon on the day on which the accident occurred, plaintiff went from the place at which he worked into the main office of the company for the purpose of obtaining a record so that he might continue his work for the day. There he noticed some of the other employees drinking soft drinks taken from the box above described, and one of them invited him to join them in having a drink. He took a bottle out of the cooler and in attempting to open it, cut his hand rather badly.
[1] Passing, for the moment, from the question of the extent of the disability and whether that disability resulted from the accident described or from the prior condition of the plaintiff we immediately devote our attention to the problem of determining whether or not the accident in question can be said, as a matter of law, to have occurred in the course of employment and to have arisen out of it. It is conceded, of course, that it is well settled that when an employee temporarily leaves his work to get a drink or to go to the toilet, he is, nevertheless, considered as still being "at work" to such an extent that if, during that interval, he is injured in an accident, it is proper to say that the accident occurred "in the course of the employment."
[2] But it is not enough that the accident occur in the course of the employment; the statute requires also that it must arise out of it.
Counsel for defendants concede that it is well established under the jurisprudence of this state and elsewhere that if an employee is required by the business of his employer to be in the particular place in which he is at the time of the occurrence of an accident, it is proper to say that that accident, whatever may have been its cause, arose out of the employment, but they argue that if the employee was in the place in which the accident occurred not because he was called there by the necessities of the master's business but solely to serve a purpose of his own or for his own pleasure, an accident which then occurs does not arise out of his employment. There is unquestionably in each of our three most pertinent cases at least one expression which encourages counsel and lends color to their suggestion that we should see a distinction between such cases as those in which *Page 388 
an employee either was at work at the time of the accident or was in the exact place in which he had been called by his work, and a case such as this in which the employee had left the place in which his work required him to be and, for purposes of his own, had gone to some other place.
For instance, in Nesmith v. Reich Bros. et al., 203 La. 928,14 So.2d 767, 772, the Supreme Court held that there could be recovery in compensation because the employee was at the place at which the accident occurred "* * * for no other purpose than to serve his employer, * * *". Again, in Kern v. Southport Mill, Ltd., 174 La. 432, 141 So. 19, 21, the court said: "It was his employer's business which called him to the place and time of the accident and not his own pleasure or business * * *".
Similarly, in Harvey v. Caddo De Soto Cotton Oil Co.,199 La. 719, 720, 6 So.2d 747, 750, we find the following language: "* * * We believe that it is in keeping with the spirit of such statutes to resolve that any accident which befalls an employee, in consequence of a force to which he is subjected because he is required to be at a particular place at the time the force exerts itself, is one arising out of and having causal connection with the employment. * * *"
Counsel for defendants in their brief say: "It cannot be said that St. Alexandre's duty to The Texas Company required him to go to the water cooler or to drink or attempt to drink the R C Cola and it cannot be said that he was there and attempting to drink the R C Cola for no other purpose than to serve The Texas Company."
We are not so sure of this. It is certain that a master must realize that an employee cannot, during every moment of the working day, remain at his bench or at his desk and that he must, every now and then, leave his work to get a drink, to attend to the requirements of nature or for some other similar purpose. Mr. Horovitz in an article entitled: "Trends in Workmen's Compensation", Indiana Law Journal, Vol. 21, No. 4, giving cases supporting each particular factual situation mentioned, says: "It is now clear that the mere fact that an employee is performing a personal act when injured does not, without further evidence, place him outside the protection of the workmen's compensation acts. Many acts of a personal nature are clearly incidents of the employment, even though occurring during leisure time. Thus, getting fresh air, smoking, resting, eating food or ice cream, quenching thirst, whether by water, beer or wine, transportation to and from work, taking a bath provided by the employer, using a telephone or a toilet, or using a stairway or elevator, floors and hallways, washing and pressing working clothes, obtaining war bonds, or getting eyeglasses, have been held compensable incidents ('contractual', 'Reasonable,' 'fixed,' 'customary' or just plain 'incidents') of one's employment."
A host of decisions recognizes this. Almost since the enactment of the first workmen's compensation law the courts have recognized the necessity for this view and have held that an accident which occurs during such a temporary lull in the work occurs in the course of the employment and arises out of it. It is argued, however, that though that principle has application where the employee is drinking water which is furnished by the employer in recognition of this absolute necessity, it has no application here for two reasons; first, because it is not essential that an employee partake of cold drinks during working hours, and, second, because the drinks here were not furnished by the employer but by the employees themselves. Although the employer did not furnish the cold drinks, it recognized and approved the practice which had been established by the employees of providing themselves with such drinks. This is evidenced by the fact that the employer provided the box in which the drinks were cooled and the ice which was used for this purpose. And we have no doubt that the employer much preferred to have the employees furnish these cold drinks, and drink them in its own establishment to the former practice of permitting them to leave the plant, and go to a cold drink stand a block or so away.
[3] If an employer must recognize that water must be furnished to his employees *Page 389 
and that therefore an accident which occurs while an employee is drinking water occurs in the course of the employment and arises out of it, it seems to us illogical to hold that where an employer allows his employees to substitute for the water which he furnishes, cold drinks furnished by themselves, when they partake of those cold drinks they depart from the course of their employment, and that an accident which occurs during that departure does not arise out of the employment.
The principle on which are based the decisions in the Kern case, the Harvey case, the Nesmith case and other similar cases is that whenever an accident occurs in the course of employment, no matter what may have been the cause of it, it must be held to have arisen out of the employment. In other words, as is shown by the quotations above set forth, if the employee is at work or is at a place to which he was called by his work, any accident which causes injury must be said to have arisen out of the work. If we follow this principle and also the other one which we have discussed, that whenever an employee temporarily leaves his work to get a drink or for some similar, necessary purpose, he still remains "in the course of employment", then we fail to see how it can be said that because he drinks a cold drink furnished by himself, with the approval of the master, instead of water furnished by the master, he departs from "the course of employment" and is not brought to the spot at which he drinks by the requirements of his work.
We have thought over the suggestion that consideration should be given to the nature of the instrumentality which actually caused the accident; that we should take into account the fact that the bottle was not furnished by the employer and was not a necessary part of its building, its machinery, its furnishings or supplies; that it was provided by the employees themselves out of a fund with which the employer had no concern whatever. If that suggestion should be adopted then the result arrived at would be that whenever an employee has temporarily left his desk or his bench to get a drink or for some similar purpose, if he is hurt by some flying piece of machinery, for instance, or by some article provided by the master or necessary in his business, then there is coverage in compensation, whereas if an employee should be hurt as here, by some article not provided by the master and not necessary in the conduct of his business, then there is no coverage. To adopt, this theory would require that we overlook the reasons followed in the Kern, Nesmith and Harvey cases for those decisions clearly establish the doctrine that in determining whether any particular accident arises out of the employment, the ownership or nature of the instrumentality which causes the accident is of no importance; that all that is important is that it be found that the employee was brought to the spot at which the accident occurred by his master's business. And we repeat that since the master must realize that the drinking of water or other refreshing liquids is necessary, it is clearly the master's business that the employee is attending to when he engaged in such relaxation or in the partaking of such refreshment.
The views which we have expressed have, to a considerable extent, resulted from a study of the more recent jurisprudence interpreting the phrase "arising out of the employment", for there can be no question that in practically all jurisdictions there has been a trend — if we may use a word which is almost a masterpiece of understatement — towards the liberalizing or extending of the workmen's compensation statutes so as to include situations which only a few years ago would have been held not within the protection of these statutes.
In many jurisdictions early doctrines have been expressly overruled and in others the effect of earlier cases has been effectively nullified by later decisions. Mr. Horovitz, the author of "Injury and Death under Workmen's Compensation Laws", in an article entitled: "Assaults and Horseplay under Workmen's Compensation Laws," published simultaneously by the Illinois Law Review in October, 1946, and by the Law Society Journal of Massachusetts in August, 1946, discusses this trend and summarizes his conclusions as follows: "It is heartening to find that a number of courageous courts have recently reviewed the reasoning behind some of their old decisions as to 'arising out of employment', *Page 390 
and finding the reasoning faulty, they have openly and unqualifiedly overruled the earlier decisions. * * *" and, later in his article, he says: "The modern nationwide trend is clearly towards a more liberal view as to compensability of injuries to employees. This is especially true in construing the phrase 'arising out of' the employment."
We have made an extensive search in a hope to discover cases which, under their facts, could not be distinguished from the case at bar and we think we have located at least one such case. It is Moldove v. Rosenhien Co., Inc., et al.,266 App. Div. 931, 43 N.Y.S.2d 888,889, decided in 1943 by the Third Department, Appellate Division of the Supreme Court of New York. We quote the entire decision —
"Claimant was employed as a millinery trimmer. During her hours of employment, while attempting to open a bottle of pepsi-cola the bottle broke, cutting her hand, and as the result claimant sustained injuries which disabled her.
"The Industrial Board found that it was customary for employees to drink beverages during working hours and that the employer recognized, suffered and permitted this custom. The finding is amply supported by the evidence. The injuries arose out of and in the course of claimant's employment and the award should be affirmed.
We have also been much impressed with the reasons set forth by the Supreme Court of Arizona in Goodyear Aircraft Corporation v. Industrial Commission et al., 158 P.2d 511, 516. There the employer furnished a water cooler for drinking purposes. It consisted of a large galvanized can equipped with a faucet. It was filed with ice and water twice a day. The company permitted the employees to bring their lunch and to cool bottles of beverages on the ice in this cooler. The employee brought his lunch and a bottle of cola. As he attempted to put the bottle into the cooler on the ice, the bottle came into contact with the can or with the ice, and exploded, cutting his eye and hand, and resulting in the loss of the sight of one eye. It was contended that the accident had not arisen out of the employment. The Supreme Court of Arizona discussed a great number of cases, and reached the conclusion that the accident had arisen out of the employment. The court said: "It seems to be settled beyond any doubt that an accidental injury arises in the course of employment when it occurs, as in this case, within the period of employment at a time where the employee had a right to be in the performance of his duties and while either fulfilling his duties or engaged in doing something incidental thereto — here in caring for his lunch. * * *"
The court recognized the fact "that the accident is not one which resulted from any necessary risk or danger of the employment, or inherent therein."
But having recognized that fact, the court said: "In the present case if the lunch and Cola had been furnished by the employer to the employee, Laws, and he had been injured as disclosed by the evidence, nearly all of the authorities would indicate that the accident was one which arose out of his employment. In principle it would seem that the same rule should be applied here. What difference does it make who furnished the lunch? It was necessary for the employee to eat. He was authorized to bring his lunch on the premises and was required to care for it and consume it there. He was allowed an additional half hour to compensate for his lunch period. If the bottle had exploded when he was actually in the process of consuming his lunch, the claim could not well be made that the accident did not arise out of his employment because this was part of his job for which he was being paid. Does the fact that the bottle exploded when he was in the act of placing it on ice, to make it fit for consumption, alter the situation? We think not. Since the bringing and eating of his lunch on the premises during his hours of employment was one of the conditions of his employment, he most certainly had the right not only to care for it but also to properly prepare it for consumption."
[4] We next consider the extent and the duration of the disability of plaintiff. When the tip of the bottle broke, his right thumb was cut on the "Palmer aspect" near the base of the thumb. The tendon *Page 391 
was severed and an operation was performed at Charity Hospital. This operation required "rather extensive incisions" and a plaster dressing was applied and allowed to remain in place for about three weeks. Dr. Anderson, to whom plaintiff was sent by Maryland Casualty Company, stated, referring to the dressing: "* * * when it was removed there was immediately observed a rapid, rather coarse tremor of the extremity which has persisted to the present time * * *".
The accident occurred in August 1944 and Dr. Anderson's report was made in May, 1946. Two other operations were performed and Dr. Neal Owens, on July 12, 1945, reported that "before full reflection of continued use will be obtained" still another operation would be necessary.
It is obvious from the reports of the surgeons that though the injury was limited to the thumb of the right hand, the results of it were much more serious than would be indicated by the mere statement that a tendon was cut.
There is little disagreement among medical experts as to the condition of the plaintiff and we are convinced that until there is a marked improvement in the use of his right thumb, he will not be able to perform, with any degree of satisfaction, the kind of work in which he had been engaged for many years and that until he does so improve, he is totally disabled. We base our conclusion in this regard on what was said by the Supreme Court in Stieffel v. Valentine Sugars, Inc., et al.,188 La. 1091, 179 So. 6; and on what we said in Hecht v. Higgins Industries, Inc., et al., La. App., 25 So.2d 351; and in Ranatza v. Higgins Industries, Inc., La. App., 18 So.2d 202. See also Butzman v. Delta Shipbuilding Co., Inc., et al., La. App., 21 So.2d 80 and Daigle v. Higgins Industries, Inc., and Maryland Casualty Co., La. App., 28 So.2d 381.
It is true that the experts were of the opinion that there is a possibility that the condition of the plaintiff will improve. For instance, Dr. Anderson says: "If the tremor is functional as I think, it might reasonably be expected to yield to treatment, and I think it may improve spontaneously when his hand is better and he is able to resume his work." Dr. Echols said: "A psychiatrist might be able to eliminate or decrease this tremor but I doubt it very much." However, under the terms of the Workmen's Compensation Act the defendants may reopen the matter whenever it appears that plaintiff's condition has improved and that he can do work of any reasonable character.
[5] Defendants vehemently contend that even if plaintiff's condition is such that he must be considered as totally disabled, still he is not entitled to recover for the reason that his condition — they argue — is not the result of the accident but is due to paralysis agitans which in turn resulted from a disease from which he suffered prior to the accident.
On this question we must be guided by the medical experts. Some doctors maintain that his present condition is due entirely to the accident while those having a contrary opinion say that he is suffering from a "Parkinsonian syndrome" or "paralysis agitans" which is not the result of the trauma.
It is always difficult to reach a conclusion on a question of this kind when the experts are found to disagree so radically as they do here, and that they disagree is made evident by the following quotations from their reports. One doctor says: "This man has Parkinson's Disease in an early stage. This is a very serious, progressive disease of the nervous system. It has nothing to do with the accident and by no means could the tremor have come from the accident." Another states: "It is my opinion this man is not suffering from a Parkinsonian Syndrome, which is the ordinary name for paralysis agitans but believe that the tremor is of a functional nature being limited to the upper extremity and most probably associated with and caused by the trauma." Still another, an expert who was appointed by the District Judge, when he found himself confused by the conflicting opinions of the other doctors, said: "There is absolutely no evidence that this tremor is due to encephalitis or any other organic disease of the central nervous system. The tremor is unlike that seen in encephalitis * * *." *Page 392 
And he wound up his report with the following statement: "There is no factor of malingering or wilful maintenance of this tremor. * * * This tremor is just as much a part of the injury as the severed tendons and is just as compensable."
We must be largely guided by the finding of the District Judge before whom all the experts appeared or to whom the reports were made. Surely we cannot say that he was manifestly in error in concluding that the present condition of the plaintiff was caused by the accident.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.