SAVOY, Judge.
Plaintiff brought suit for recovery of workmen’s compensation benefits as for total, permanent disability plus penalties and attorneys’ fees.
With respect to disability, plaintiff’s petition alleged that he was injured on November 14, 1960, while employed as a pulpwood cutter, when a tree fell and struck him across the shoulders and back. He also suffered a broken right femur, just below the hip.
With respect to the rate of compensation, his petition alleged that he was entitled to payments of $35.00 per week.
Defendants’ answer admitted the accident and the hazardous nature of the employment. It alleged, however, that plaintiff was able to return to work as of May 21, 1962, and that he had been paid all benefits to which he was entitled.
The lower court, upon trial on the merits, gave judgment in favor of defendants and dismissed plaintiff’s suit at his • cost, from which judgment plaintiff has appealed.
No claim for penalties and attorneys’ fees is made on this appeal. Two issues are before this Court: (1) the question of plaintiff’s disability; and (2) the rate of compensation.
DISABILITY
Plaintiff was examined by three physicians, Dr. P. M. Davis, an orthopedic surgeon; Dr. Heinz K. Faludi, a neurosurgeon; and Dr. Thomas A. LaCour, a general practitioner.
Through the time of trial, plaintiff complained chiefly of discomfort in the area of *30 his right hip, neck and hack pain and numbness in his hands.
Dr. Davis treated plaintiff from immediately after the accident to the time he discharged him as able to return to work on May 31, 1962. On November 17, 1960, Dr. Davis performed an open reduction of the fractured right femur, using a plate and a nail to repair the break. The nail was surgically removed on March 5, 1962. At the time Dr. Davis discharged plaintiff, he found him free of neck and back pain, which he had never attributed to the accident; he found complete healing of the fracture, and while he felt plaintiff would he left with a permanent disability of about twelve per cent of the body as a whole resulting from the fracture, he felt plaintiff was able to, and would be benefited by, returning to work. He felt that plaintiff would have some degree of disability in the beginning upon returning to work, and he estimated a period of about six months as being needed for plaintiff to fully recondition himself.
Dr. Faludi examined plaintiff on one occasion, April 25, 1962. He felt that plaintiff had some minor problems in his back and neck, which could well be congenital in nature. He felt that plaintiff had a ten per cent permanent disability of the body as a whole. With regard to plaintiff’s ability to return to his former job, Dr. Faludi stated that he did not feel that plaintiff was able to do so as of April, 1962, for the reason that he would need time to recondition himself after being off work since November, 1960, which would likely take quite a few months. Dr. Faludi felt, however, that exercise and light work would he beneficial to plaintiff. Having seen plaintiff only once, he had expressed no opinion regarding disability as of the time his deposition was taken in March, 1963.
Dr. LaCour treated plaintiff on November 14, 1960, the date of the accident, and then referred him to Dr. Davis. He then saw plaintiff again on June 23, 1963, after plaintiff had been discharged by Dr. Davis, and continued to see plaintiff at intervals through the time of trial. Dr. LaCour felt that plaintiff has a fifty per cent over all disability, considering his educational level, and that he is totally disabled for pulpwood work. However, Dr. LaCour agreed with the other doctors that the fractured femur had healed itself and he could find no positive findings to demonstrate plaintiff’s subjective complaints of neck and back pain and numbness of the hands.
Summarizing the medical testimony, this Court finds no manifest error in the judgment of the lower court holding that plaintiff has not proved he is either totally or partially disabled from returning to work. There is no evidence in the record on which we could, in good conscience, hold that plaintiff has shown a causal connection between the accident and his neck, back and hand complaints. While plaintiff testified in a general way that he did not feel that he was capable of returning to his old job, he offered no other lay testimony tending to substantiate his claim. What the evidence does show is that plaintiff’s right hip has healed, leaving him with an impairment of function, produced by a slight and non-disabling weakness of the leg, which would give him some non-disabling discomfort in performing extremely heavy work.
RATE OF COMPENSATION
In cases of impaired function, compensation benefits are computed under the provisions of LSA-R.S. 23:1221(4) (p). Griffin v. Liberty Mutual Insurance Company, (La.App., 2 Cir., 1961), 131 So.2d 153; and Anderson v. Continental Can Company, (La.App., 2 Cir., 1962), 141 So.2d 48.
In the instant case, plaintiff was paid $26.00 per week from the time of the accident until September 10, 1962; thereafter, for a period of eighteen weeks, he received $10.00 per week, the minimum allowed under the statute, based on Dr. Davis’ assess *31 ment of a 10% disability of the body as a whole. The total amount paid plaintiff was $2,650.00.
Plaintiff sustained his accident the first day he went to work, and consequently, his weekly pay rate must be constructed from the surrounding circumstances. The evidence is uncontradicted that plaintiff furnished the power saw with which to cut the pulpwood and was to be paid $3.00 per cord, but that his labor was worth $2.00 per cord without the saw, as was the prevailing rate of pay for labor for pulpwood cutters who did not furnish the power saw. It was contemplated that an average of three cords per day would be cut. The value of the saw is not to be taken into account. Where a considerable proportion of the service for which recompense is paid includes the furnishing of equipment with which the work is done, the wages of the employee for purposes of the compensation act are arrived at by deducting the amount of the recompense which is for the equipment rather than for the labor of the employee. Nesmith v. Reich Brothers, 203 La. 928, 14 So.2d 767; and, Malone, Louisiana Workmen’s Compensation Law (1951 ed.), Section 327. Consequently, plaintiff’s rate of pay for compensation purposes was $2.00 per cord, $6.00 per day, $36.00 per week.
The absolute limit established by LSA-R.S. 23:1221(4) (p) is not to exceed 65% of wages during one hundred weeks. In the instant case, that would amount to $23.40 x 100, which is $2,340.00. Compensation payments previously made for disability are to be deducted from a compensation award for a non-disabling impairment of a physical function. LSA-R.S. 23:1223. Thus, the $2,650.00 compensation previously paid to plaintiff is more than the maximum amount of compensation to which the plaintiff is entitled for impairment of a physical function. Since in our opinion a finding of total or partial disability cannot be sustained under the evidence, the plaintiff is entitled to recover no more compensation than he received prior to this suit, and the trial court correctly dismissed his claim for further compensation benefits.
Accordingly, the judgment of the lower court is affirmed. Costs of this appeal are to be borne by plaintiff-appellant.
Affirmed.